UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MORGAN ROE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> REGINALD LA'VINCIENT WILSON, *et al.*, <br><br> Defendants. | Case No. 18-cv-00171 (CRC) |

## **OPINION AND ORDER**

Plaintiffs Morgan Roe, a minor, and his father John Doe allege that a District of Columbia public school teacher sexually abused Roe and the District failed to respond appropriately. Plaintiffs have renewed their motion to file a second amended complaint which adds several new defendants, tort claims, and factual allegations. For the reasons that follow, the Court grants plaintiffs' motion in part and denies it in part.

## I. Background

Plaintiffs filed this action on January 26, 2018, against the District of Columbia, District of Columbia Public Schools ("DCPS"), former DCPS chancellor Antwan Wilson in his official capacity, and former DCPS teacher Reginald Wilson. See Compl. [ECF No. 1]. Plaintiffs alleged that Reginald Wilson, Roe's second grade math teacher at the time, sexually harassed and eventually sexually assaulted Roe, id. ¶ 2, and that school officials failed to respond appropriately to Doe's reports of concern, id. ¶¶ 4–7.

There is no need to rehash in full detail plaintiffs' efforts to file a second amended complaint. In short, soon after filing an amended complaint [ECF No. 18], which added new defendants and factual allegations, plaintiffs sought leave to file a second amended complaint

[ECF No. 19]. After plaintiffs filed a notice of intent to file yet another complaint [ECF No. 24], the Court instructed plaintiffs to file a renewed motion for leave to file a second amended complaint. See April 12, 2018 Minute Order. Plaintiffs did so, [ECF No. 31], but soon sought to file tort claims against the District of Columbia as well, [ECF Nos. 41 & 42]. The Court held a status conference on June 5, 2018, to discuss the several motions related to plaintiffs' efforts to file a second amended complaint and directed plaintiffs to submit another renewed motion for leave. See June 5, 2018 Minute Order. Before the Court now is plaintiffs' operative renewed motion for leave to file a second amended complaint [ECF No. 44].

## II. Legal Standards

Federal Rule of Civil Procedure 15 gives courts discretion whether to grant leave to amend a pleading. Fed. R. Civ. P. 15(a). "Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failures to cure deficiencies, or futility." Richardson v. United States, 193 F.3d 545, 548–49 (D.C. Cir. 1999). A proposed amended complaint is futile when it would not survive a motion to dismiss; determining whether a proposed amended complaint would survive a motion to dismiss is equivalent to review under such motion. See In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 215–16 (D.C. Cir. 2010) (citations omitted). The party opposing amendment bears the burden of showing why leave to file an amended pleading should not be granted. Smith v. Café Asia, 598 F. Supp. 2d 45, 48 (D.D.C. 2009).

### III. Analysis

#### A. Plaintiffs' § 1983 claim

In Count I, plaintiffs allege that all defendants[1] are liable for Fifth Amendment violations under 42 U.S.C. § 1983 based on the District of Columbia's purported custom, policy, or practice of failing to respond appropriately to allegations of sexual misconduct. Plaintiffs seek to elaborate on some of the allegations supporting this claim. See, e.g., Proposed Second Amended Complaint ("Prop. Second Am. Compl.") [ECF No. 44-3] ¶¶ 208–09, 221–26. The Court grants leave to do so with respect to almost all additions because "factual allegations [that] merely fine-tune the basis for the relief" and "clarify but do not reshape the action[] are rarely a bad thing" and "certainly do[] not provide a basis for denying leave to amend." Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz, 793 F. Supp. 2d 311, 324 (D.D.C. 2011).

One paragraph, however, does not belong. Plaintiffs are instructed to remove reference to the District of Columbia's statutory notice requirement, D.C. Code § 12-309, because that requirement is irrelevant to their constitutional claims at issue in Count I. As the Court will discuss in more detail below, however, section 12-309 is relevant to, and indeed bars, plaintiffs' tort claims against the District.

#### B. Plaintiffs' Title IX claim

In Count II, plaintiffs allege a violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, based on the District of Columbia's failure to screen teachers and train

---

[1] In their reply, plaintiffs concede that their suit is limited to defendants District of Columbia, Reginald Wilson, Dale Mann, and Jacqueline Anderson. Plaintiffs' Reply to the District of Columbia's Opposition ("Pls.' Reply to D.C.") [ECF No. 53] at 12. Accordingly, plaintiffs are instructed to strike from their corrected second amended complaint the other proposed defendants—Antwan Wilson, Amanda Alexander, Kaya Henderson, Jed Ross, and Phillip Lattimore III.

employees to prevent and report sexual misconduct. Plaintiffs seek to replace previously named defendants District of Columbia Public Schools and Antwan Wilson with Kaya Henderson. However, plaintiffs have conceded that Henderson is not a proper defendant. Accordingly, plaintiffs are instructed to remove the individual defendants from Count II in their corrected second amended complaint, leaving only the District.

Defendants have not otherwise challenged plaintiffs' minor substantive refinements to their Title IX allegations. Because these minor changes merely fine-tune the basis for relief, the corrected second amended complaint may incorporate the proposed changes. See Council on Am.-Islamic Relations Action Network, Inc, 793 F. Supp. 2d at 324.

C. Plaintiffs' tort claims against the District of Columbia

Next, plaintiffs seek leave to add various tort claims against the District of Columbia in Counts III and IV. The District responds that such claims would be futile because they are barred by District of Columbia Code § 12-309. Under that section, a tort action may not be maintained against the District for damages to person or property unless the claimant provides, within six months, written notice of the approximate time, place, cause, and circumstances of the injury or damage, or files a police report. Because section 12-309 "constitutes a departure from the common law concept of sovereign immunity . . . , it is to be strictly construed." Cason v. D.C. Dep't of Corr., 477 F. Supp. 2d 141, 145 (D.D.C. 2007) (quoting Gwinn v. District of Columbia, 434 A.2d 1376, 1378 (D.C. 1981)).

There is no question that plaintiffs failed to comply with this statutory notice requirement. However, they contend that section 12-309 is unconstitutional as applied to minors like Roe who may be incapable of providing timely notice to the District before filing suit. Prop.

4

Second Am. Compl. ¶¶ 247, 256.[2]  While some jurisdictions have held or suggested that application of a statutory notice requirement to minors incapable of compliance is unconstitutional, see, e.g., Langevin v. City of Biddleford, 481 A.2d 495 (Me. 1984), any such holding is inapplicable here.

In Doe by Fein v. District of Columbia, the District of Columbia Court of Appeals answered a certified question from the D.C. Circuit whether section 12-309 barred Jane Doe, a minor, from proceeding with negligence claims for failing to investigate and protect her from abuse and neglect.  697 A.2d 23, 25 (D.C. 1997).  The tragic circumstances of that case bear repeating briefly: after suffering from severe burns on more than a third of her body, Doe spent five months in the hospital in the custody of the District of Columbia Department of Human Services.  Id. at 26.  She was then released into the custody of her grandmother.  Id.  Almost eleven months after her injuries, a lawyer sent on her behalf a letter purporting to provide section 12-309 notice to the District.  Id.  A few years later, a guardian filed a lawsuit on Doe's behalf.  Id.  While recognizing the "unfortunate result" of its decision, the D.C. Court of Appeals concluded that Doe failed to timely comply with the notice requirement and that the statute does not permit equitable tolling.  Id. at 29–31.  The court declined to consider whether its failure to recognize an equitable tolling exception to section 12-309 rendered the statute unconstitutional as applied because that question was beyond the scope of certification.  Id. at 31 n.12.  The court noted, however, that the D.C. Circuit would be free to address that federal question.  Id.  So it

---

[2] Contrary to the District's suggestion, District of Columbia's Opposition to Plaintiffs' Renewed Motion for Leave to Amend ("D.C. Opp'n") [ECF No. 49] at 6, plaintiffs do not contend that section 12-309 is facially unconstitutional because it treats governmental and private tortfeasors differently.  Although plaintiffs appear to have advanced such an argument previously, they have since abandoned that tack.  See Plaintiffs' Motion for Leave to File Tort Claims Against the District of Columbia [ECF No. 41] at 3.

did. The D.C. Circuit concluded that because Doe had been released into her grandmother's custody before the expiration of the six-month notice period, her constitutional claim that she was effectively incapable of complying with section 12-309 had no merit. Doe by Fein v. District of Columbia, 124 F.3d 1309 (tbl) (D.C. Cir. 1997).

Here, as in Doe, Morgan Roe was in his parents' custody before the expiration of the six-month notice period. In addition, plaintiffs explain that Roe actually informed his mother about the alleged sexual misconduct. Plaintiffs' counsel "opines" that Roe's mother initially decided not to tell Roe's father for fear that he would "take the law into his own hands." Pls.' Reply to D.C. at 2 n.2. But whatever the reasons for Roe's mother's delay or her failure to provide notice herself, Doe still controls. Section 12-309 is not unconstitutional as applied to Roe. Accordingly, the Court denies plaintiffs' motion for leave to add the tort claims in Counts III and IV against the District of Columbia because they are barred by section 12-309 and thus would be futile.

### D. Plaintiffs' tort claims against individual defendants

This leaves plaintiffs' efforts to add tort claims against individual defendants in Counts III and IV. As explained above, plaintiffs have acknowledged that many of the listed individuals are not proper defendants. Accordingly, because those individuals are not proper and suit against the District is barred by section 12-309, plaintiffs are left with Mann and Anderson, the school's principal and vice principal, as individual defendants in Count III and Reginald Wilson in Count IV. The Court will address those claims in turn.

*1. Count III*

Count III really constitutes two separate claims: negligent hiring, supervision and retention, and negligent infliction of emotional distress.[3] Plaintiffs allege in the proposed second amended complaint that as school administrators, Mann and Anderson owed the children of John Eaton Elementary School a duty of care to be free from sexual misconduct. Prop. Second Am. Compl. ¶ 235. They contend that Mann and Anderson were legally required to report Doe's allegations of Wilson's sexual misconduct under District of Columbia Code § 4-1321.02. Id. ¶ 240–42. And they allege that Mann and Anderson breached that duty by failing to run a background check on Wilson, ignoring and failing to report Doe's claims to the police, and renewing Wilson's contract the following year. Id. ¶¶ 238, 243, 245.

Defendants contend that these tort claims are futile because plaintiffs' reports to the school officials were too "vague" to plausibly invoke the mandatory-reporting requirements in section 4-1321.02. D.C. Opp'n at 8. The Court disagrees.

First, with respect to Anderson, plaintiffs allege that after a second-grade ballet performance, Anderson approached Doe regarding a complaint from Wilson that Doe was intimidating him. Prop. Second Am. Compl. ¶ 77, 80–82. Doe allegedly responded that Wilson "*should* be made to feel uncomfortable." Id. ¶ 83 (emphasis in original). Doe allegedly continued to explain that Wilson had "spent several months making sexual come-ons and overtures to his *seven-year [old] son*, Morgan, often in front of Morgan's classmates." Id.

---

[3] District of Columbia case law appears to consider claims of negligent hiring, supervision, and retention together, see Blair v. District of Columbia, , -- A.3d --, 2018 WL 3651395, at *11 (D.C. Aug. 2, 2018), and "does not appear to distinguish between negligent supervision and retention," Islar v. Whole Foods Mkt. Grp., Inc., 217 F. Supp. 3d 261, 265 n.1 (D.D.C. 2016) (citing Phelan v. City of Mount Rainier, 805 A.2d 930, 937 (D.C. 2002)).

(emphasis in original). As examples, Doe said that Wilson had told Roe he had "pretty eyes" and later caressed Roe's face while describing Roe as "special." Id.

Second, with respect to Mann, plaintiffs allege that "[o]ver the course of the month," Doe repeatedly tried to speak with Mann about the sexual overtures he had reported to Anderson. Id. ¶ 85. Plaintiffs allege that Mann was dismissive of Doe's allegations, and made clear that he did not want to hear further complaints about Wilson. Id. ¶ 86–87.

At this early stage in the litigation, these alleged reports were not too vague to implicate the reporting requirements of section 4-1321.02. Doe repeatedly referenced Wilson's "sexual come-ons," which plausibly suggests that Anderson and Mann should have had "reasonable cause to suspect that a child . . . is in immediate danger of being a mentally or physically abused . . . child." D.C. Code § 4-1321.02. Moreover, contrary to defendants' suggestion, D.C. Opp'n at 8–9, it is irrelevant to Anderson and Mann's mandatory reporting duties whether or not Doe separately and voluntarily filed a police report or a report with the Child and Family Services Agency. See D.C. Code § 4-1231.02 (mandating that school officials "immediately report" child abuse or neglect while allowing, but not requiring, "any other person" to make such a report).

Thus, for purposes of the motion to amend, defendants have failed to show that these tort allegations fall short of basic pleading requirements. Accordingly, plaintiffs may include the tort claims listed in Count III in their corrected second amended complaint. Plaintiffs are instructed, however, to separate the tort claims—negligent hiring, supervision, and retention, and negligent infliction of emotional distress—into separate two counts and ensure that they have properly pled the requisite elements for each tort.

*2. Count IV*

As with Count III, Count IV really constitutes multiple separate tort claims: assault, battery, and intentional infliction of emotional distress. Wilson argues that plaintiffs have failed to demonstrate that they should be granted leave to amend, largely based on their perceived failure to explain the additional claims and justify their undue delay. Wilson's Opposition to Plaintiffs' Renewed Motion for Leave to Amend ("Wilson Opp'n") [ECF No. 47] at 3. As Wilson emphasizes, courts in this district have denied leave to amend based on undue delay where "the movant failed to promptly allege a claim for which they already possessed evidence." Id. (quoting United States ex rel. Westrick v. Second Chance Body Armor, Inc., 301 F.R.D. 5, 9 (D.D.C. 2013)). According to defendants, because plaintiffs chose not to file tort claims at the outset, they should be denied leave now. Id.; D.C. Opp'n at 7.

Although the Court has already demonstrated considerable patience for what plaintiffs term "excusable neglect," Plaintiff's Amended Reply to Wilson's Opposition ("Pls.' Am. Reply to Wilson") [ECF No. 51] at 4, it will permit the amendment. The addition of these three tort claims against Wilson "does not fundamentally alter the scope of the action" because, as plaintiffs emphasize, the claims arise out of the same allegations as Counts I and II. See Westrick, 301 F.R.D. at 7, 8. Moreover, the parties have not conducted discovery and there are no pending ripe dispositive motions. See id. at 9. Plaintiffs are advised, however, that no further leave to amend will be granted absent compelling circumstances.

E. Scandalous allegations to be struck

Finally, the Court turns to a series of allegations advanced in the proposed second amended complaint that defendants contend should be struck as scandalous.

On its own or on a party's motion, the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A court has broad discretion to strike matters under Rule 12(f); however, striking a portion of a pleading is a drastic remedy." Uzlyan v. Solis, 706 F. Supp. 2d 44, 51 (D.D.C. 2010). A statement is "scandalous" within the meaning of Rule 12(f) where it "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." Pigford v. Veneman, 215 F.R.D. 2, 4 (D.D.C. 2003) (quoting 2 Moore's Federal Practice § 12.37[3] at 12–97). A statement is immaterial or impertinent within the meaning of Rule 12(f) where "it is not relevant to the resolution of the issue at hand." Judicial Watch, Inc. v. U.S. Dep't of Commerce, 224 F.R.D. 261, 263 (D.D.C. 2004).

The tenor of plaintiffs' unsubstantiated allegations against Mr. Mann call for this drastic remedy. Plaintiffs baldly accuse Mann of resigning from a previous principalship and then acting negligently as a result of a completely speculative drug addiction. Prop. Second Am. Compl. ¶¶ 36–38, 209, 245. These accusations are no more than baseless "name-calling" that have no place in a document filed with this Court. See In re Johnson, 236 B.R. 510, 523 (D.D.C. 1999). Indeed, plaintiffs concede that their allegations are grounded on nothing more than rumors found on a local online forum. Pls.' Reply to D.C. at 11. But this is a forum for litigation, not gossip. To the extent plaintiffs can establish that these allegations regarding Mann are relevant to their tort claims, they are free—within the bounds of the Federal Rules of Civil Procedure—to explore such issues through discovery. Until such time, however, they may not resort to rumor-mongering in the place of actual allegations. Plaintiffs are instructed to refrain from any reference to Mann's completely unsubstantiated drug addiction in their corrected second amended complaint.

So, too, with respect to many of plaintiffs' allegations against Wilson. Plaintiffs will not be permitted to lob unsubstantiated character attacks at Wilson. Accordingly, they shall remove any references to "sexual psychopath(s)," "pedophile(s)," or any combination thereof. The Court trusts that, when reviewing the corrected second amended complaint, Plaintiffs will keep in mind that "it is a privilege to practice law in this Court, not a right" and that "the Court's docket is not a forum for personal attacks." Pigford v. Veneman, 225 F.R.D. 54, 58 (D.D.C. 2005). Again, to the extent the accusations behind these character attacks are relevant to the substance of plaintiffs' claims, plaintiffs will be free during discovery to develop a factual record and rely on that record in a dispositive motion.

Finally, plaintiffs are instructed to remove any allegations or insinuations regarding purportedly nefarious Wilson's motivations for adopting children. Although plaintiffs assert that these motivations are relevant to proving the District of Columbia's negligent hiring and retention, the Court has already concluded that any tort claims against the District are barred by section 12-309 and thus futile.

When a court orders that scandalous allegations or matters from a pleading be struck under Rule 12(f), it is usually a straightforward process: identify the offending paragraphs and instruct the party to delete them. Here, however, the offending allegations pervade the proposed second amended complaint. Accordingly, Plaintiffs shall remove any and all allegations that fall into the categories described above—baseless name-calling of Mann and Wilson and gratuitous aspersions regarding Wilson's adoptions—from their corrected second amended complaint. Before filing that complaint on the Court's electronic docket, plaintiffs shall provide defendants an opportunity to review the complaint and determine whether any objectionable material

remains. After conferring, the parties shall advise the Court if there are any remaining disagreements regarding plaintiffs' compliance with these instructions.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [ECF No. 44] plaintiffs' Renewed Motion for Leave to File Second Amended Complaint is granted in part and denied in part. It is further

**ORDERED** that plaintiffs redraft the complaint consistent with this opinion and provide a copy to the defendants' counsel on or before September 21, 2018. Defendants shall promptly alert plaintiffs to any remaining objections and the parties shall contact the Court should a further hearing be necessary. Otherwise, plaintiffs shall file the second amended complaint on or before September 28, 2018. It is further

**ORDERED** that plaintiffs' [ECF Nos. 45, 52] Motions for Leave to File Out of Time are granted; and

**ORDERED** that the [ECF No. 11] District of Columbia's motion to dismiss the original complaint is denied as moot.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: September 14, 2018