# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                   )
MORGAN ROE., a minor, by his parent and )
next friend, JOHN DOE NO. 1,           )
                                   )
        Plaintiffs,             )
                                   )   C.A. No. 1:18-CV-00171 (CRC)
        v.                   )
                                   )
District of Columbia, _et al._,       )
                                   )
        Defendants.        )
_____)

## DEFENDANT DISTRICT OF COLUMBIA'S
## MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT[1]

Defendant District of Columbia (the District), by and through counsel, hereby moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiffs' Second Amended Complaint [60-1, 62].  As grounds therefor, the District states that:

    1)      Plaintiff John Doe has not pled a viable cause of action against the District;

    2)      Plaintiff John Doe's claims are barred by the applicable statute of limitations;

    3)      Plaintiffs have failed to sufficiently plead municipal liability against the District under the Fifth Amendment pursuant to 42 U.S.C. § 1983; and

    4)      Plaintiffs have failed to plead a viable claim under Title IX, 20 U.S.C. §§ 1681-1688, against the District.

---

[1]     Although Dale Mann and Jacqueline Anderson are District of Columbia employees and have been named as defendants in this action, neither have been served with a copy of the Plaintiffs' Second Amended Complaint, which adds them as party defendants.  As such, they do not waive their right to service and no response is necessary at this time.  Undersigned counsels are not authorized to accept service on their behalf.

A Memorandum of Points and Authorities in support of this Motion and a proposed

Order are attached hereto for this Court's consideration.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Patricia A. Oxendine
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Sec. 1

/s/ Kerslyn D. Featherstone
KERSLYN D. FEATHERSTONE
D.C. Bar No. 478758
Senior Assistant Attorney General
EMMA LOMAX[2]
Assistant Attorney General
441 Fourth St., N.W., Suite 630 South
Washington, D.C. 20001
Phone: (202) 724-6600; (202) 807-0375; (202) 727-6295
Fax: (202) 741-8941; (202) 715-7821
Kerslyn.featherstone@dc.gov;
emma.lomax@dc.gov

---

[2]     Admitted to practice only in the state of Texas.  Practicing in the District of Columbia under the direct supervision of Patricia A. Oxendine, a member of the D.C. Bar, pursuant to D.C. Court of Appeals Rule 49(c)(4).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| MORGAN ROE., a minor, by his parent and ) | |
| next friend, JOHN DOE NO. 1, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | C.A. No. 1:18-CV-00171 (CRC) |
| v. ) | |
| ) | |
| District of Columbia, *et al*., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

In support of its motion to dismiss Plaintiffs' Second Amended Complaint,

Defendant District of Columbia (the District), by and through counsel, submits this

memorandum of points and authorities and states as follows:

### INTRODUCTION

Plaintiffs have failed to state a viable claim against the District in the above-captioned

action.  John Doe's claims are barred by the applicable statute of limitations given that this

lawsuit was filed more than three years from the date of any actionable claim.  Moreover, the

allegations raised by John Doe, on his own behalf, do not rise to the level of constitutional

violations and do not evince that any District custom, practice or policy led to the deprivation of

his constitutional rights or that a final policymaker acted with deliberate indifference to his

constitutional rights.  Accordingly, the Court should summarily dismiss his claims.

Similarly, the claims pled in support of Morgan Roe's claims are also insufficient to support municipal liability under 42 U.S.C. § 1983 or under Title IX of the Education Act Amendments of 1972, 20 U.S.C. §§ 1681, *et seq*. (Title IX).  The Second Amended Complaint is devoid of facts showing that a District custom, practice or policy was the moving force behind the alleged violation of Morgan Roe's constitutional rights or that a final policymaker acted with deliberate indifference to Morgan Roe's constitutional rights and thereby caused his rights to be violated.  Additionally, because Plaintiffs have not pled facts showing that an official had *actual* notice of the sexual harassment or sexual assault and/or that it was *severe and pervasive* such that it created an abusive educational environment in violation of Title IX, dismissal of Plaintiff Morgan Roe's Title IX claim against the District with prejudice is appropriate.

## STATEMENT OF FACTS

Plaintiff John Doe No. 1 filed this action, in his capacity as parent and next friend of Morgan Roe, his minor son, and in his individual capacity, on January 26, 2018.  Compl. [1].  By Order, dated September 14, 2018, this Court granted Plaintiffs leave to file an amended complaint by September 28, 2018.  *See* Order and Opinion at 12 [59].  Plaintiffs filed this amended complaint on September 29, 2018,[3] without leave of Court for the late filing, asserting constitutional claims against the District of Columbia under 42 U.S.C. § 1983 and Title IX of the Education Act Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.,* and both constitutional and common law claims against Defendants Reginald Wilson, Dale Mann and Jacqueline Anderson.  Sec. Am. Compl. [60-1, 62].  Plaintiffs' claims stem from Mr. Wilson's alleged sexual harassment of Morgan Roe, a student at John Eaton Elementary, during the period September

---

[3]      Once again, Plaintiffs have disregarded a deadline set by this Court and the filing is untimely.

2011 through May 2012, and one incident of sexual assault that allegedly occurred in or around April, May or June 2012. *Id.* at ¶ 2. According to the allegations in the second amended complaint, in February 2012, John Doe was invited by Morgan Roe's homeroom teacher to meet with them concerning incidents with Morgan Roe, and at that time, he was informed that Morgan Roe had exhibited some kind of personality disorder. *Id.* at ¶¶ 35-37. On April 18, 2012, John Doe met with the principal and homeroom teacher and was told that Morgan Roe kicked a chair around the classroom. *Id.* at ¶ 38. John Doe alleges that after that meeting, as he and Morgan Roe exited the building, they encountered R. Wilson, who stopped in front of Morgan Roe, asked where he was going, demonstratively caressed Morgan Roe's face with his hands, expressed how special he believed Morgan was and then told Morgan how he was to conduct himself in class, but "neither spoke to nor recognized [John Doe's] presence." *Id.* at ¶¶ 44, 49-52. John Doe claims he lost his job due in part to having to leave work for the three meetings at John Eaton elementary school involving Morgan Roe. *Id.* at ¶ 60.

Plaintiffs aver that on April 24, 2012, John Doe learned about another explosive incident which arose when R. Wilson did not give Morgan Roe candy that was shared with the teachers and Morgan Roe became upset and kicked a chair and threw other items in the classroom. *Id.* at ¶ 67. John Doe avers that on April 25, 2012, when vice principal Anderson asked for an explanation about his alleged intimidating behavior towards R. Wilson, he explained to her that in his presence, R. Wilson told Morgan he had pretty eyes, caressed his face with his hand while dramatically expounding on how special he believed Morgan Roe to be. *Id*. at ¶ 78. John Doe states that over the course of the month, he gave this same information to principal Mann. *Id.* at ¶ 80. John Doe avers that the next school term, he learned that R. Wilson still taught at John Eaton elementary and one day another teacher who was friends with R. Wilson berated him and

tried to intimate and embarrass him by falsely accusing him of not "providing good enough clothes for [his] children, not spending quality time with [them], and of other alleged parental failings," and suggested that the children should be placed in foster care. *Id.* at ¶¶ 103-104, 109. Similarly, on or about October 18, 2012, principal Mann allegedly suggested that John Doe's "other child was not being well taken-care of at home." *Id.* at ¶¶ 115-116.

      John Doe and his family moved out of state to Illinois in February 2013. *Id.* at ¶ 119. John Doe alleges that on June 9, 2013, he learned about an incident in which R. Wilson sexually assaulted Morgan Roe in April, May or June 2012. *Id.* at ¶ 123. John Doe alleges he called the police to report the incident and that because he learned that R. Wilson planned to adopt a child, he called D.C. Child and Family Services Agency concerning Morgan Roe's allegations. *Id.* at 124-125.

      In the Second Amended Complaint, Plaintiffs aver that R. Wilson left employment with John Eaton in or around November 2013, despite not being criminally charged. *Id.* at ¶¶ 132. John Doe alleges that in June 2014, he sent a letter to the Office of Risk Management (ORM) about the claims raised in this lawsuit and despite his repeated follow ups to ORM, he did not learn until August 2016, that ORM would not accept responsibility for R. Wilson's alleged misconduct. *Id.* at ¶¶ 136, 146-148. Plaintiffs aver that this demonstrates "DCPS' recent pattern of enabling teachers who sexually harass and sexually assault students to become and remain employed in its schools." *Id.* at ¶ 149. According to Plaintiffs, "[u]nlike Virginia and Maryland, the D.C. government does not submit the names of teachers to NASDTEC, a national database used by all fifty states to prevent sexual predators and teachers who sexually harass and sexually assault students from returning to classrooms." *Id.* Plaintiffs submit that the District is liable for the sexual harassment and assault on Morgan Roe because neither the principal nor vice principal

protected him.  Sec. Am. Compl., generally.  Plaintiffs submit that the District is constitutionally

liable because of its knowledge that its subordinates failed to "conduct background checks,

utilize more effective screening technologies for employees, or to even investigate or discipline

teachers who admit to sexually abusing minor students are so consistent that it has become a

municipal 'custom.'" *Id.* at ¶ 9.  Additionally, Plaintiffs aver that the District failed to respond to

"the need for better child sexual assault training for its principals, teachers and staff, the need to

fully participate in the NASDTEC database, the need to employ a better system of preventing

teachers who sexually harass and sexually assault students from entering DCPS classrooms, and

the need to revoke the teaching licenses of even teachers who admitted to sexually harassing and

sexually assaulting minor students…."

In an effort to support municipal liability under § 1983, Plaintiffs identify instances

where teachers employed by the District allegedly engaged in inappropriate behavior with

students.  See below:

> 1.    A D.C. public charter school teacher suspected of having an inappropriate sexual relationship with a 14-year old student in 2004 was able to find a new teaching job at a different, nearby public charter school in 2005.  *Id.* at ¶ 153.

> 2.    In 2013, a McKinley Technology High School teacher was sentenced to five years in prison after sending sexually explicit photographs of himself to male students and receiving explicit photographs – child pornography – from those minors in or around December 2012.  *Id.* at ¶ 157.

> 3.    Following the 2013-14 school year, a DCPS elementary school teacher allegedly admitted to touching a nine-year old male student inappropriately" over his clothing in the classroom and texting the child an "inappropriate" picture. *Id.* at ¶ 158.

> 4.    In February 2015, an elementary school teacher was arrested for misdemeanor sex abuse of a child.  *Id.* at ¶ 159.

> 5.    In 2016, a high school teacher pled guilty to a sex crime at Dunbar High School.  *Id.* at ¶ 160.

6.      The licenses of many of the teachers identified by Plaintiffs, including R. Wilson, were allegedly never revoked and their names were not added to the NASDTEC database. *Id.* at ¶¶ 161, 163.

7.      In 2018, an elementary school teacher was arrested for sexually assaulting two eight-year old female elementary school students and one eight-year old male elementary school student during the 2016-17 school year. *Id.* at ¶ 164.

8.      In 2018, a former teacher was arrested and charged with engaging in first-degree child sexual abuse of middle school students between 2011 and 2013. *Id.* at ¶ 163.

9.      In the mid-70s, a teacher, while working in Prince Georges' County, sexually assaulted two minor children. That same teacher began working at a Virginia school, and while there, sexually assaulted two 8th grade students. A lawsuit was filed in 1986 about his sexual misconduct and he was thereafter fired. Several years later he began working at another Virginia school where he was later terminated. The District hired this same teacher in 1986, and he began inappropriate relationships with students, one of whom gave birth to his child. *Id.* at ¶¶ 166-195.

In support of Morgan Roe's Title IX claim, Plaintiffs allege that both the principal and vice principal at John Eaton elementary school knew about the sexual harassment of minor Plaintiff Morgan, failed to stop the sexual harassment and showed deliberate indifference towards Morgan Roe. *Id.* at ¶¶ 218-220. Plaintiffs aver that Morgan Roe has been deprived "of the benefits of an education in that he was subjected to constant harassment by his peers, suffered stress and suicidal ideation, experienced the disruption of his family life and parental relationships, has internalized negative and angry feelings toward homosexuals and has a diminished ability to form healthy and positive relationships with teachers and fellow students." *Id.* at ¶ 221.

The District now moves to dismiss Plaintiffs' claims filed against it under 42 U.S.C. § 1983 and under Title IX.

**STANDARD OF REVIEW**

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate when a moving party has failed to set forth a claim for which he/she is entitled to relief. The determination of whether a dismissal is proper must be made on the face of the pleadings alone. *See Telecommunications of Key West, Inc. v. United States,* 757 F.2d 1330, 1335 (D.C. Cir. 1985); *Celotex Corp. v. Catrett,* 106 S. Ct. 2548 (1986). A plaintiff is required to plead enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007).

In order to survive a motion to dismiss, a plaintiff's complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.,* 127 S.Ct. at 1964-65. "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966.

**ARGUMENT**

**A.      John Doe Has Not Pled A Viable Cause of Action Against the District.**

Title IX does not apply to John Doe, an adult who was not matriculating at any school at the time of the alleged misconduct committed against his son, and he has not pled facts supporting entitlement to relief under this statute.  *See* Sec. Am. Compl., generally.  To the extent John Doe seeks relief against the District under 42 U.S.C. § 1983 because (1) Dale Mann offended him when he allegedly asked him to become his assistant, (2) a teacher at John Eaton elementary school lambasted him for how he was treating R. Wilson; (3)  both the other teacher and Dale Mann suggested that he was neglecting his other son and that his children should be removed from his home; or (4) ORM took years to notify him that his claim was denied, none of

these incidents rise to the level of constitutional violations nor are they actionable against the

District under § 1983.  *See* Sec. Am. Compl. at ¶¶ 136, 146-148.  Under. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects or cause to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress. For purposes of this section, any Act
> of Congress applicable exclusively to the District of Columbia shall be considered
> to be a statute of the District of Columbia.

The case law is very clear that under § 1983, a municipality cannot be held liable under

principles of *respondeat superior.  See Triplett v. District of Columbia*, 108 F.3d 1450, 1453

(D.C. Cir. 1997), *citing Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691

(1978).  Rather, municipal liability can only be found when its customs, practices or policies are

the moving force for the constitutional violation.  "Municipal liability should not be imposed

*when the municipality was not itself at fault*." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818

(1985). *Id.* at 818 (emphasis added).  Here, the second amended complaint is devoid of facts

demonstrating that John Doe's constitutional rights were violated.  *See* Sec. Am. Compl.,

generally.  The constitution does not protect mere offenses committed by school officials and the

fact that John Doe did not receive a response about his notice letter sent to ORM within a period

he expected is not protected by the constitution.  There second amended complaint is simply

devoid of any facts showing that his constitutional rights were violated or that the alleged

violation stemmed from a District custom, practice or policy, or that a final policymaker acting

with deliberate difference caused his constitutional rights to be violated.  *Id.*  For these reasons,

dismissal of John Doe's claims is appropriate.

**B.      The Statute of Limitations Bars John Doe's Claims Against the District.**

Plaintiff John Doe has filed this lawsuit in his capacity as parent and next friend of Morgan Roe, a minor, and in his individual capacity.  *See* Pls.' Sec. Am. Compl. at 1 [60-1, 62]. While it is unclear of the facts or grounds upon which John Doe's alleged constitutional claims rest, the operative period for the alleged claims would be between September 2011 to June 2012, when Morgan Roe attended John Eaton elementary school.  *Id.* at ¶ 2.  A party seeking relief for a constitutional claim has three years to file the action.  *See* D.C. Code § 12-301(8) providing that the statute of limitations is three years for claims which are not otherwise prescribed.   Here, the lawsuit in this action was not filed until January 2018.  *See* Compl. [1].  Thus, John Doe's claims are time-barred, and should be dismissed.

**C.      Plaintiffs Have Failed to Plead a Viable Municipal Liability Claim In Favor of Morgan Roe Against the District Under 42 U.S.C. § 1983.**

Plaintiffs seek to hold the District liable under the Fifth Amendment for the alleged constitutional misconduct of R. Wilson. *See* Sec. Am. Compl., generally. Under § 1983, a municipality can be held liable for a constitutional violation *only if* the plaintiff alleges *facts* that indicate his or her injury was caused by a municipal policy, practice or custom. *See Monell,* 436 U.S. at 694; *see also Tuttle*, 471 U.S. at 824, emphasis added.  Municipal liability results only when the municipality itself can be directly charged with fault for an unconstitutional deprivation.  *See Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1985).  For any action brought under § 1983, courts must address the threshold question: "whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *See Baker v. McCollan*, 443 U.S. 137, 146-47 (1979). Therefore, municipal liability results only when the policy or custom fairly

attributable to the municipality is the "moving force" behind the particular constitutional

violation. *See Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citing *Monell*, 436 U.S. at 694).

Here, Plaintiffs allege that R. Wilson violated Morgan Roe's constitutional rights by

sexually harassing and assaulting him while he was a student at John Eaton.  Sec. Am. Compl.,

generally.  However, as has been made clear under *Monell,* the District cannot be held liable for

the purported constitutional misconduct of its employees; rather, it can only be held liable for its

own conduct that led to the constitutional deprivation of Morgan Roe's rights.  *See Triplett*, 108

F.3d at 1453, *citing Monell,* 436 U.S. at 691.  Assuming for the purposes of this motion, as the

Court must do, that R. Wilson sexually harassed and assaulted Morgan Roe when he was a

student at John Eaton elementary school, Plaintiffs must plead facts that show a District custom,

practice or policy that *was the moving force* behind the violation of Morgan Roe's constitutional

rights or that a final policymaker was responsible for the constitutional violation through

deliberate indifference.  *Id.* "[T]here must be an affirmative link between the policy and the

particular constitutional violation alleged." *Tuttle*, 471 U.S. at 824.  Plaintiffs have failed to

plead facts that show an *affirmative link* between a District policy, practice or custom and the

asserted constitutional violation or that a final policymaker acted with deliberate indifference.

Sec. Am. Compl., generally.

A review of the facts Plaintiffs pled to support municipal liability bears out the absence

of an affirmative link between District policies, practices and customs, actions by a final

policymaker and the incidents allegedly endured by Morgan Roe.  *First,* the fact that a D.C.

public charter school teacher, who was suspected of having an inappropriate sexual relationship

with a 14-year old student in 2004, was able to find a new teaching job at a different, nearby

public charter school in 2005, does not support municipal liability.  *Id.* at ¶ 153.  The term

"District of Columbia public school" does not include a public charter school as DC Public

Charter Schools (DCPCS) are independently governed.  *See* D.C. Code § 38-1800, *et. seq.*  "In

1996, Congress enacted the District of Columbia School Reform Act of 1995 (School Reform

Act), Pub.L. No. 104–134, § 2002, 110 Stat. 1321 (1996) (codified as amended at D.C. Code §

38–1800.02, *et seq.* (2001)), in order to provide a framework for educational reform in selected

areas of the public education system, particularly with respect to providing a process for

conferring, renewing, and revoking charters." *Richard Milburn Pub. Charter Alternative High*

*Sch. v. Cafritz*, 798 A.2d 531, 533 (D.C. 2002).  The School Reform Act "allows the charter

schools to operate without being subject to the District's education laws and regulations, D.C.

Code § 38–1802.04(c)(3)(A) and (B), and to receive funding comparable to that received by the

traditional public schools within the system." *Id.* at 534 (citing D.C. Code § § 38–1802.10).  *See*

*also Kamit Inst. for Magnificent Achievers v. Dist. of Columbia Pub. Charter Sch. Bd.*, 81 A.3d

1282, 1287 (D.C. 2013) ("Public charter schools in the District of Columbia are governed by the

provisions of the School Reform Act (the "SRA") codified at D.C. Code § 38–1802.01 *et*

*seq.*).  Moreover, this alleged incident occurred in 2004, more than eight years before the

allegations giving rise to this lawsuit and no affirmative link between the two incidents is pled in

the second amended complaint.  *See* Sec. Am. Compl., generally.  For these reasons this incident

cannot be the basis for municipal liability.

  *Second,* because the incident involving a McKinley Technology High School teacher who

was sentenced to five years in prison after sending sexually explicit photographs of himself to

male students and receiving explicit photographs from them occurred in or around December

2012, which is after the incidents giving rise to this lawsuit, it also could not have been the

moving force causing the violation of Morgan Roe's constitutional rights during the period

September 2011 through June 2012.  *Id.* at ¶ 157.  Similarly, neither the incidents occurring

during the 2013-14 school year, nor the incidents occurring in February 2015 and in 2016

involving teachers who allegedly engaged in sexual abuse of minor children could not have been

the moving force giving rise to the alleged sexual assault of Morgan Roe given that they

allegedly occurred after the incidents involving R. Wilson and Morgan Roe.  *Id.* at ¶¶ 158-160.

Nor could the arrest identified by Plaintiffs that occurred in 2018 involving allegations of sexual

assault occurring during the 2016-17 school year have caused harm to Morgan Roe.  *Id.* at ¶ 164.

 *Third,* while Plaintiffs identify an incident of sexual abuse of middle school

students between 2011 and 2013, in the second amended complaint, according to

Plaintiffs, the arrests did not occur until 2018.  *Id.* at ¶ 163.  Given that the arrests did not

occur until 2018, Plaintiffs cannot show that the District knew about this incident before

the incidents involving Morgan Roe; a key element to support municipal liability.  *See*

*Monell,* 436 U.S. at 694 (alleged custom, practice or policy must have been the moving

force of the alleged violation.)

 *Fourth,* that the licenses of many of the teachers identified by Plaintiffs, including R.

Wilson, were allegedly never revoked and their names were not added to the NASDTEC

database also is insufficient to impute municipal liability against the District for the alleged

sexual misconduct of R. Wilson.  Sec. Am. Compl. at ¶¶ 161, 162.  John Doe admits that he had

no knowledge about the incident when R. Wilson touched Morgan Roe's private parts until June

2013, and did not report the incident to the District until then.  Thus, revoking Mr. Wilson's

license after that 2012 incident because of that incident could not have prevented the alleged

sexual assault. Plaintiffs have made no showing in the second amended complaint that the

District was armed with sufficient information to take steps to revoke Mr. Wilson's license prior to the April, May or June 2012 alleged sexual assault.  Sec. Am. Compl., generally.

 *Fifth,* the facts and decision in the *Blue* case fare no better for Plaintiffs in their quest to hold the District liable under § 1983.  *See Blue v. District of Columbia,* 811 F.3d 14, 18 (D.C. Cir. 2015).  In *Blue*, the teacher sexually assaulted minor children when he worked in Prince Georges' County, Virginia and the District.  *Id.*  Just like the *Blue* plaintiff, Plaintiffs here failed to plead facts to show that the decision to hire the teacher without conducting a proper investigation was that of a *final* policymaker or that any *final* policymaker acted with deliberate indifference by failing to discipline or otherwise terminate the teacher.  *Id* at 19-20. *See Byrd v. District of Columbia,* 807 F. Supp. 2d 37, 75 (D.D.C. 2011)(It is clear that the "authority to make municipal policy is the authority to make final policy specific to the tortious conduct.") Emphasis added.  *See also City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988) (The identification of officials having "final policymaking authority" is a question of state (including local) law, rather than a question of fact for the jury), *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008) (finding that city manager was not a final policymaker with respect to an employment decision); *Rasche v. Village of Beecher*, 336 F.3d 588, 600 (7th Cir. 2003) (determining that a code enforcement officer, whose duties included identifying zoning violations and issuing tickets, was not a final policymaker); *Jett v. Dallas Ind. Sch. Dist.*, 7 F.3d 1241, 1249–50 (5th Cir. 1993) (finding that superintendent of school district was not a policymaker because he was following policy decisions set by the district's board of trustees). The *Blue* Court denied the plaintiff's appeal and determined that at most "the complaint suggests that the District made a serious mistake in hiring [the teacher]."  *Blue,* 811 F.3d at 20.  Here, viewing the facts pled by Plaintiffs in the light most favorable to them, the most Plaintiffs'

allegations suggest is that the District made a serious mistake in hiring R. Wilson or in more timely conducting an investigation into his conduct; it is devoid of any allegations that any *final* policymaker made these decisions.  *See* Sec. Am. Compl., generally.  Moreover, there are no allegations pled in this lawsuit that R. Wilson's name appears in the NASDTEC database such that had the District investigated his background it would have learned about his propensities to commit sexual assaults against minor.  *Id.*  Thus, there are no facts pled showing that the District's alleged failure to conduct a background check on R. Wilson caused him to sexually assault Morgan Roe or that it would have prevented the sexual assault he allegedly committed against Morgan Roe or the sexual harassment that Morgan Roe allegedly endured.

*Finally,* Plaintiffs' allegations pled in the second amended complaint are conclusory and lack specificity to support municipal liability. Sec. Am. Compl., generally.  In *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), the Court held that "[it] need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Moreover, as held in *Twombly,* the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly,* 127 S. Ct. at 1965. Here, Plaintiffs' allegations are insufficient to raise their § 1983 claims against the District above the speculative level.  *See Moonblatt v. District of Columbia*, 572 F. Supp. 2d 15, 20 (D.D.C. 2008) (In order to establish liability pursuant to an unofficial municipal practice or custom, such practices or customs must be so "permanent and well settled" that they "may be considered governmental customs or practices even if they have not received formal approval through official state decision-making channels.").  For these reasons, dismissal of Plaintiffs' municipal liability claim against the District should be dismissed with prejudice.

D.      <u>**Plaintiffs Have Failed to Plead a Viable Title IX Claim Against the District**</u>.

Title IX of the Education Act Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.,* reads as follows: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *See Blue*, 811 F.3d at 21. In its decision finding in favor of the District on the *Blue* plaintiff's Title IX claim, the *Blue* Court relied upon the decision in *Gebser v. Lago Vista Independent School District,* 524 U.S. 274, 290 (1998), in which "the Supreme Court held that a student can recover damages under Title IX for sexual harassment by a teacher when three elements exist: (1) an appropriate official at the school, *i.e.,* one with authority to institute corrective measures, (2) had *actual* notice of the harassment and (3) demonstrated deliberate indifference to the harassment. *Id.* at 291. The Circuit Court affirmed the trial court's determination that the *Blue* plaintiff failed to demonstrate any of the three factors necessary to impute liability on the District. *Blue,*811 F.3d at 21.

In *Gebser,* a teacher made inappropriate remarks to the plaintiff and other students and initiated sexual contact with the plaintiff by kissing and fondling her.  In fact, the two had sexual intercourse on a number of occasions during the remainder of the school year during class time, but not on school property. *Id.* at 278. While the petitioner did not report the relationship to school officials, the parents of two other students complained about the teacher's inappropriate comments made in class. The principal met with the teacher and cautioned him about his remarks although the teacher denied any inappropriate conduct, but no report was made to the school superintendent. The sexual misconduct was later discovered by a police officer, and the teacher was terminated from employment. *Id.* The trial court determined that the parents' complaint to the principal concerning the teacher's classroom comments was the only one the school had

received about the teacher and "that evidence was inadequate to raise a genuine issue on whether the school district had actual or constructive notice that [the teacher] was involved in a sexual relationship with a student." *Id. at* 279. The Supreme Court affirmed the dismissal of *Gebser's* Title IX action. *Id.* at 293.

In this case, John Doe submits that he notified the Principal and Vice Principal about the teacher's conduct towards Morgan Roe *before* the alleged sexual assault occurred and that no action was taken in response. Sec. Am. Compl. at ¶¶ 4-7.  Just as the Supreme Court rejected *Gebser's* Title IX claim, so should this Court reject Plaintiffs' Title IX claim. Plaintiffs have simply pled insufficient facts to establish the three required factors to support a Title IX action: (1) an appropriate official at the school, *i.e.,* one with authority to institute corrective measures, (2) had actual notice of the harassment and (3) demonstrated deliberate indifference to the harassment.  Even if the principal can be deemed an appropriate official at the school, John Doe did not the place him on notice  about the alleged sexual assault until June 2013.  Sec. Am. Compl. at ¶¶ 123-124.  By that time, John Doe and Morgan Roe had already left the state and the school, and thus the principal would not have had authority to institute corrective measures. With respect to the alleged sexual harassment that allegedly occurred during sometime between 2011 and 2012, there is no showing that the principal had *actual* notice of "sexual" harassment committed by R. Wilson against Morgan Roe.  According to John Doe, on or about April 18, 2012, he and Morgan Roe saw R. Wilson, who bent down on one knee, told Morgan Roe that he had pretty eyes, touched his face with his hands, and told him how he should behave. *Id.* at ¶ 78. In response, John Doe did nothing until a week later on April 25, 2012, when he gave R. Wilson an envelope containing his resume and stared him down on another occasion.  *Id.* ¶ 68.  Later that day, after John Doe was questioned by the vice principal as to why he exhibited intimidating

behavior towards R.Wilson, he told the Vice Principal about his observations on April 18, 2012, including that Morgan Roe was "special."  *Id.* at ¶ 78.  Over the course of the month, John Doe repeated to the Principal what he had shared with the Vice Principal.  *Id.* at ¶ 80.  Without more, no finding can be made that this information gave the Principal *actual* notice that R. Wilson was sexually harassing Morgan Roe.  Under Title IX, the sexually harassing conduct must be *severe and persistent* and must compromise or interfere with educational opportunities normally available to students.  *See Brown v. Hot, Sexy & Safter Prod'us,* 68 F.3d 525, 540 (lst Cir. 1995)(explaining that such a violation occurs when the educational environment is "permeated with discriminatory intimidation, ridicule, and insult" of sufficient severity).  The second amended complaint is devoid of any facts demonstrating that the Principal or Vice Principal was notified that R. Wilson's actions "compromised or interfered" with educational opportunities available to Morgan Roe.  *Cf. Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 650-52 (1999). In that case, the Court found that plaintiff's allegations of sexual harassment, including sexual advances, by another fifth-grader, identified as G.F., over a five-month period created an intimidating, hostile, offensive and abusive school environment and that school officials' failed to prevent the child's suffering at the hands of another student, who harassed plaintiff and other students.  The record shows that other students also made complaints about G.F. and tried to get an audience with officials and could not do so.  The trial court dismissed the action, but  the Supreme Court overturned that decision finding that "a private damages action may lie against a school board under Title IX in cases of student-on-student harassment, but only where the funding recipient acts with deliberate indifference and the harassment is so severe that it effectively bars the victim's access to an educational opportunity or benefit" and found that such pervasiveness existed in that instance.  Here, what was allegedly reported to the principal by

John Doe, a single act that occurred in the presence of John Doe, did not rise to the level of a

severe and pervasive sexual abusive educational environment, and Plaintiffs' Title IX claim

should be dismissed.

## **CONCLUSION**

For the reasons herein, the District requests that the second amended complaint as to the

District be dismissed in its entirety.

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Patricia A. Oxendine
PATRICIA A. OXENDINE
D.C. Bar No. 428132
Chief, Civil Litigation Division, Sec. 1

/s/ Kerslyn D. Featherstone
KERSLYN D. FEATHERSTONE
D.C. Bar No. 478758
Senior Assistant Attorney General
EMMA LOMAX[4]
441 Fourth St., N.W., Suite 630 South
Washington, D.C. 20001
Phone: (202) 724-6600; (202) 807-0375; (202) 727-6295
Fax: (202) 741-8941; (202) 715-7821
Kerslyn.featherstone@dc.gov;
emma.lomax@dc.gov

---

[4]     Admitted to practice only in the state of Texas.  Practicing in the District of Columbia under the direct supervision of Patricia A. Oxendine, a member of the D.C. Bar, pursuant to D.C. Court of Appeals Rule 49(c)(4).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
MORGAN ROE., a minor, by his parent and )
next friend, JOHN DOE NO. 1,                   )
                                                    )
            Plaintiffs,                            )
                                                    )     C.A. No. 1:18-CV-00171 (CRC)
            v.                                       )
                                                    )
District of Columbia, *et al*.,                  )
                                                    )
            Defendants.                          )
_____)

**ORDER**

Upon consideration of Defendant District of Columbia's Motion to Dismiss Plaintiffs'

Second Amended Complaint, any opposition thereto, the District's Reply, and the entire record

herein, it is by this _____ day of _____ 2018,

**ORDERED:**  that Defendant District of Columbia's Motion is **GRANTED** for the

reasons set forth therein; and it is,

**FURTHER ORDERED**:  that all claims in the Second Amended Complaint as to the

Defendant District of Columbia are hereby **DISMISSED WITH PREJUDICE**.

.**SO ORDERED.**


                                                    _____
                                                    JUDGE CHRISTOPHER R. COOPER
                                                    U.S. DISTRICT COURT FOR THE
                                                    DISTRICT OF COLUMBIA