IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MORGAN ROE, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:18-cv-00171 ) |
| REGINALD LA'VINCIENT WILSON, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' MEMORANDUM OF OPPOSITION TO THE
DISTRICT OF COLUMBIA'S MOTION TO DISMISS**

Plaintiffs respectfully request that the Court deny the District of Columbia's Motion to Dismiss. [ECF No. # 65].

I.  **Plaintiffs asserted a viable claim under Title IX, 20 U.S.C. §§ 1681-1688, against the District.**

A school district will not be liable in damages under Title IX for teacher-on-student sexual harassment "unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct. *Gebser v. Lago Vista Ind. Sch. Distr*., 524 U.S. 274 (1998). Title IX plaintiffs, like Appellants, seeking to recover damages against a school district for teacher-on-student sexual harassment must establish two things to survive summary judgment: (1) a school district official with the authority to take corrective measures had actual notice of the harassment; and (2) the official with such notice was deliberately indifferent to the misconduct. *See Gebser*, 524 U.S. at 290-93; *Davis v. Dekalb County Sch. Dist.,* 233 F.3d 1367,

1

1371 (11th Cir.2000) *cited in Sauls v. Pierce County School Dist.,* 399 F.3d 1279, 1284 (11th Cir. 2005).

Dale Mann is an official of the school district with authority to institute corrective measures on DCPS' behalf. Many Title IX lawsuits alleging municipal liability fail because the Plaintiff never filed a complaint with the head of the agency, typically the only person authorized to discipline or fire a bad employee. (e.g., school chancellor, police chief). In this case, however, the D.C. Code of Municipal Regulations expressly creates several exceptions to the typically absolute authority of the Chancellor or Superintendent to hire and fire all teachers.

In the District of Columbia, the Superintendent of Schools or the Superintendent's designee may effect the dismissal, suspension, or demotion for cause of any employee under his or her authority. 5 D.C. Mun. Reg. § 5-E1402. One exception to the section 5-E1402 concerning the exclusive duty or authority of a superintendent or superintendent's designee dismissing a teacher is in the case of a probationary employee. 5 D.C. Mun. Reg. § 5-E1402. Neither the Superintendent nor the Superintendent's designee is authorized to separate a probationary employee from employment with DCPS. *Id*.

As a new DCPS teacher in 2011, Defendant Wilson was a probationary teacher the entire 2011-12 school year, despite having previously taught in Mississippi. D.C. Mun. Reg. § 5-E1307 (new teachers are required to spend their first two years on probation).

A Supervisor is the administrative head of a school. In the case of a teacher such as Reginald Wilson, the principal is the Supervisor. *Oates v. District of Columbia*, 647 F. Supp. 1079 (D.D.C. 1986) (CBA stated that "the supervisor shall make available to all ET-15 personnel in the school a list of vacancies and the qualifications" and "the athletic director at Ballow

advised the principal of vacancies on the coaching staff, and one of the vacancies was football coach… [t]he vacancy announcement was dated April 19, 1985"). Consequently, the task of investigation and discipline fell to Defendant Wilson's Supervisor, Dale Mann. As Defendant Wilson's Supervisor, Dale Mann was permitted to investigate Defendant Wilson for misconduct and to engage in corrective actions including but not limited to providing written counseling and issuing written letters of reprimand.

Unfortunately, despite receiving actual notice of teacher misconduct, Mann was deliberately indifferent to such notice. Mann neglected his obligation under Title IX to investigate, and if necessary, to discipline Wilson. Mann's actions can be distinguished from those of school officials in *Sauls v. Pierce County School District*, 399 F. 3d 1279 (11th Cir. 2005). In *Sauls*, minor plaintiff asserted that the school district was deliberately indifferent because it failed to respond to credible allegations of the sexual abuse of a minor. *Id.* Although the school district in *Sauls* had no evidence of a sexual relationship between a female teacher and a sixteen-year old male student, the school district nonetheless took corrective actions. *Id.* at 1282. Because one "tip" only referred to former students, the school official did not have the option of removing any of the students from Blythe's classes. *Id*. The school official did, however, admonish the accused teacher both orally and in writing, and directed her to avoid even the appearance of impropriety when dealing with students. *Id*. The school official also instructed the accused teacher to avoid situations where she would be alone with male students. Based on these actions, the Eleventh Circuit concluded that the school district was not deliberately indifferent to the allegation of sexual abuse of a minor.

The facts alone easily enable us to distinguish the instant case from that of *Sauls*. Like the school official in *Sauls*, Dale Mann received credible allegations from a boy's parent that a

teacher was inappropriately touching and making verbal sexual overtures to the little boy. Like the school official in *Sauls*, Dale Mann was authorized to counsel, admonish, and reprimand the accused teacher. Sadly, unlike the school official in *Sauls*, Dale Mann refused to use his official authority to question, counsel, or reprimand Wilson. Unlike the official in *Sauls*, Mann was deliberately indifferent to the plight of minor Plaintiff Roe, did no such thing, and thus the District of Columbia can be faulted as being deliberately indifferent, and thus liable under Title IX.

After complaining falsely about being harassed by Roe's father Doe, and having Mann and Anderson act to defend him and to ignore Doe's allegations about Wilson's sexual harassment and assault of his child, Wilson felt emboldened to further emotionally and mentally damage minor Plaintiff Roe by keeping him alone in a room and sexually assaulting him. Sec. Am. Compl. ¶¶ 83-90. Instead of investigating Wilson, the following year Mann assigned Wilson to teach younger preschool children and attempted to silence Doe (by suggesting he could report Doe for child neglect) instead of reporting Wilson. Sec. Am. Compl. ¶¶ 94, 115-16. Had Mann investigated, counseled, and reprimanded Wilson based on Doe's complaints, Mann could have deterred Wilson from sexually assaulting minor Roe. For that reason, the District of Columbia Public School can and should be held liable for the damages suffered by minor Plaintiff Roe.

**II.         Plaintiffs sufficiently asserted municipal liability against the District under the Fifth Amendment pursuant to 42 U.S.C. § 1983.**

This circuit has identified several ways in which a plaintiff may allege a municipal policy or custom. Specifically, she may point to (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (4) "the failure of the government to respond to a

>need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations."

*Blue v. District of Columbia*, 811 F. 3d 14, 18-19 (D.C. Cir. 2015) (Tatel, J.) (lamenting that, on appeal, Blue pursued only the theory that under certain circumstances, a single decision by a municipal official with final policymaking authority can constitute a municipal policy).

As Defendant acknowledges, a municipality can be found liable when its customs, practices, or policies are the moving force for the constitutional violation. Mot. 10 [ECF No. 67]. Consequently, Defendant attempts to assert that Plaintiffs have not demonstrated that a practice or policy was the moving force behind the violation of Morgan Roe's constitutional rights.

Plaintiffs assert that DCPS' acquiescence of child sex abusers not only represents a colossal failure by a policy maker to act, but a knowing failure that even attracts men like Reginald La'Vincient Wilson to move here from other parts of the country to teach in DCPS' schools. The rarely-investigated DCPS teachers or those never investigated, like Wilson or Weismiller from the *Blue* case (Sec. Am. Compl. ¶¶ 153-195) represent only the small fraction of the misbehaving teachers that the Department of Justice occasionally decides to prosecute. DCPS is well aware of many other DCPS teachers – including teachers John Eaton under Dale Mann - are simply never prosecuted because Assistant U.S. Attorneys like Toni Florence simply decline to prosecute every case in which the DOJ believes an adult to be a pedophile. People like Florence and her colleagues, being assigned to the unglamorous child sexual abuse unit, seek to amass a strong enough record of success to take them up and out to better assignments. When a case seems possibly too tough to win, as opposed to the airtight, impossible-to-lose cases they have gone forward with, they do not prosecute. Sec. Am. Compl. ¶ 158 (DCPS elementary

school teacher Giovanni Peña *admitted* to touching a nine-year old male student inappropriately" over his clothing in the classroom); *see also Former School Teacher Sentenced to 2 ½ Years in Prison For Sexually Abusing Fourth Grade Student in Classroom*, DEPARTMENT OF JUSTICE, Sept. 4, 2015, https://www.justice.gov/usao-dc/pr/former-school-teacher-sentenced-2-12-years-prison-sexually-abusing-fourth-grade-student (Peña texted nude photos of his erect penis to the child, as well as a photo of Peña's sperm), https://www.justice.gov/usao-dc/pr/former-school-teacher-sentenced-2-12-years-prison-sexually-abusing-fourth-grade-student. Man like Reginald Wilson know this and continue to apply to DCPS schools and for whatever reason have little difficulty being hired.

In minor Roe's case, not only did the school principal Mann, attempt to silence Roe's father Doe by offering him a job, after Doe complained to Mann, Mann also made a veiled threat to report Roe for allegedly neglecting his other child – instead of ever once reporting Reginald Wilson for sexually abusing minor Plaintiff Roe and other children. Sec. Am. Compl. ¶¶ 41, 115, 116.Misbehaving teachers have been enabled by ineffective policies to very casually and unabashedly molest children in DCPS. DCPS' failure to act is so consistent that it has plainly become custom.

Plaintiffs have presented enough evidence of this failure in the complaint to demonstrate that this systemic failure is real, and no mere set of unconnected, unsubstantiated allegations. If the Court permits Plaintiffs to engage in discovery, Plaintiffs will only further establish this.

The District of Columbia's failure to respond by ever training its employees to recognize, report, and possibly even repel child sexual assault speaks volumes about its deliberate indifference to the problem of sexual abuse of children in its schools. In 2011 and 2012, and even to this day, DCPS does not include such training among all the other in-service courses it

requires teachers to complete. In minor Roe's case, teachers who could have assisted Roe and his family instead rallied around and supported Wilson who they believed to be unfairly accused. Sec. Am. Compl. ¶¶ 98-114 (Eric Hutchins verbally assaulted Doe, and Hutchins' mother threatened to have Roe's children taken away to foster care).

**III.       Plaintiff John Doe never claimed that he had his own claims under Title IX or 42 U.S.C. 1983.**

Plaintiff John Doe never sought relief for himself under Title IX or 42 U.S.C. 1983. Defendant District of Columbia should stop trying to mislead the Court in this way.

**IV.       Plaintiff's claims are not barred by the applicable statute of limitations.**

Defendant District of Columbia claims that a three-year statute of limitations expired and that minor Plaintiff Roe's claims are time-barred. In fact, the Supreme Court has determined that 42 U.S.C. § 1983 actions are equivalent to personal injury actions and that the state's statute of limitations for personal injury actions will be applied to § 1983 claims. *Wilson v. Garcia*, 471 U.S. 261, 266 (1985). Because the time frame for filing a sexual abuse lawsuit is three years from one's eighteenth birthday, for abuse that happened to a minor, the statute of limitations from minor Plaintiff's claims will expire in 2025.

Because John Doe is not a minor, Defendant argues that under the law his claims – not claims filed on behalf of Morgan Roe as Morgan Roe's best friend, should be time-barred. Doe requests that you consider the equitable principle on laches in permitting any claims he personally has against any of the Defendants in tort to lie at least with regard to equitable relief. "The doctrine [of laches] is equitable in nature, and its application 'turns on whether the party seeking relief delayed inexcusably or unreasonably in filing suit,' not simply whether the party delayed." *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 531–32 (D.C. Cir.

7

2010) (quoting *Pro–Football, Inc. v. Harjo*, 415 F.3d 44, 49 (D.C.Cir.2005) (per curiam)). " '[L]aches is not, like [the statute of] limitation, a mere matter of time,' but 'attaches only to parties who have unjustifiably delayed in bringing suit.' " *Id*. at 531 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S. Ct. 582 (1946); *Pro–Football, Inc*., 415 F.3d at 49 ). Laches "applies where there is '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.' " *Pro Football, Inc. v. Harjo*, 565 F.3d 880, 882 (D.C. Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121–22, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002); *see also Gates v. Dist. of Columbia*, 66 F. Supp. 3d 1 (D. D.C. 2014).

In this case, Roe's and Doe's reliance upon Sheldon Cohen, an attorney employed by The Suder Law Firm, a firm concentrating in child sexual abuse cases, caused significant undue delay that should not be attributed to a lack of diligence on the part of either Roe or his father, Doe. Sec. Am. Compl. ¶ 136.  After U.S. DOJ AUSA Toni Florence declined to prosecute Reginald Wilson, *id*. at ¶ 130, Cohen effectively became disinterested in the case, advising simply that Doe's family file a tort claim so they could stop contacting him. *Id*. at 136.  When he advised them to do this, Cohen was already aware that Doe had missed the six-month D.C. Code-mandated deadline to notify the D.C. Government of an impending lawsuit, and thus, should have known that any tort claim filed with the D.C. Government would be dismissed or disregarded.  He advised Doe to file a tort claim against the D.C. Government anyway. *Id*. at 136. Cohen never advised his clients to take any other action, such as filing this federal lawsuit, despite the fact that federal causes of action can continue whether a Plaintiff notifies the D.C. government of pending litigation within six months or not.  The D.C. government intentionally, or with disregard to the Plaintiffs' legal rights, took two years simply to tell Plaintiffs it saw no

liability in tort. Sec. Am. Compl. ¶¶ 146-48. The D.C. Government did not opine on any liability under Federal causes of action even Plaintiffs threatened them with federal lawsuits for two years. *Id.*

Based on the advice of counsel, Roe pursued administrative remedies that he was told had a good chance of success. His attorney never suggested timely filing separate legal action in Federal court against the District of Columbia. Roe had no way of knowing that his son's attorney simply wanted no more to do with the case after AUSA Florence declined to prosecute Reginald Wilson.

Per the doctrine of laches, this Court should find that no statute of limitations bars actions by Plaintiff Doe or Roe. The District of Columbia, a defendant in this case, unreasonably delayed Doe, and thus Roe, from filing this action, by taking an unreasonable period to issue what should have been an automatic denials of his tort claim, which failed due to a failure to notify the Mayor within six months. Because the District of Columbia demonstrated a lack of diligence, and in doing so, gravely caused both Plaintiffs to miss statutes of limitations in this case, under the doctrine of laches, this Court should permit both Plaintiffs pursue actions in this case despite the expiration of any statute of limitations.

### V.     **Conclusion**

For the foregoing reasons, Plaintiffs ask that the Court deny in its entirety Wilson's motion to dismiss.

DATED: December 11, 2018		Respectfully submitted,

		THE LAW OFFICES OF
		GERALD L. GILLIARD, ESQ. LLC

		  /s/ Gerald L. Gilliard
		Gerald L. Gilliard, Esq.
		D.C. Bar. No. 497726
		1629 K Street NW, Suite 300
		Washington, D.C. 20006
		Tel. (202) 827-9753
		Fax. (202) 478-1783
		E-Mail: ggilliard@employmentlegalteam.com