IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MORGAN ROE, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:18-cv-00171 |
| REGINALD LA'VINCIENT WILSON, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM OF OPPOSITION TO DEFENDANTS DALE MANN AND JACQUELINE ANDERSON'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Plaintiffs respectfully request that the Court deny, in its entirety, the motion to dismiss filed by Defendant Dale Mann (Mann) and Jacqueline Anderson (Anderson). [ECF No. 80].

**I.   Tort Claims by Doe against Mann and Anderson Should Not Be Time-Barred**

Plaintiffs never asserted in any versions of their complaints to date that Plaintiff John Doe had a claim against Mann or Anderson, e.g., negligent infliction of emotional distress to Doe. Doe is an adult, and given the passage of time since 2012 or even 2013, when he learned more about Reginald Wilson grabbing his son's penis, normally such claims would be time-barred.[1] To date, all claims have been asserted on behalf of minor Plaintiff Doe.

---

[1] The District of Columbia claimed in another motion it filed in this case [ECF No. 67] that a three-year statute of limitations expired and that minor Plaintiff Roe's claims are time-barred. In fact, the Supreme Court has determined that 42 U.S.C. § 1983 actions are equivalent to personal injury actions and that the state's statute of limitations for personal injury actions will be applied to § 1983 claims. *Wilson v. Garcia*, 471 U.S. 261, 266 (1985). Because the time frame for a minor to file a sexual abuse lawsuit in the District of Columbia is three years from the minor's eighteenth birthday, the statute of limitations from minor Plaintiff Roe's claims will expire in 2025.

However, Doe disagrees that he should have no opportunity to file such torts against Mann or Anderson due to statutes of limitations, and may consider filing sand should this Court agree with the Doe requests that you consider the equitable principle of laches in permitting any claims he personally has against any of the Defendants in tort to lie at least with regard to equitable relief.  "The doctrine [of laches] is equitable in nature, and its application 'turns on whether the party seeking relief delayed inexcusably or unreasonably in filing suit,' not simply whether the party delayed." *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 531–32 (D.C. Cir. 2010) (quoting *Pro–Football, Inc. v. Harjo*, 415 F.3d 44, 49 (D.C. Cir. 2005) (per curiam)). " '[L]aches is not, like [the statute of] limitation, a mere matter of time,' but 'attaches only to parties who have unjustifiably delayed in bringing suit.' " *Id*. at 531 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S. Ct. 582 (1946); *Pro–Football, Inc*., 415 F.3d at 49 ). Laches "applies where there is '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.' " *Pro Football, Inc. v. Harjo*, 565 F.3d 880, 882 (D.C. Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121–22, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002); *see also Gates v. Dist. of Columbia*, 66 F. Supp. 3d 1 (D. D.C. 2014).

In this case, Roe's and Doe's reliance upon Sheldon Cohen, an attorney employed by The Suder Law Firm, a firm concentrating in child sexual abuse cases, caused significant undue delay that should not be attributed to a lack of diligence on the part of either Roe or his father, Doe. Sec. Am. Compl. ¶ 136.  After U.S. DOJ AUSA Toni Florence declined to prosecute Reginald Wilson, *id*. at ¶ 130, Cohen effectively became disinterested in the case, advising simply that Doe's family file a tort claim so they could stop contacting him. *Id*. at 136.  When he advised them to do this, Cohen was already aware that Doe had missed the six-month D.C. Code-

mandated deadline to notify the D.C. Government of an impending lawsuit, and thus, should have known that any tort claim filed with the D.C. Government would be dismissed or disregarded.  He advised Doe to file a tort claim against the D.C. Government anyway. *Id*. at 136. Cohen never advised his clients to take any other action, such as filing this federal lawsuit, despite the fact that federal causes of action can continue whether a Plaintiff notifies the D.C. government of pending litigation within six months or not.  The D.C. government intentionally, or with disregard to the Plaintiffs' legal rights, took two years simply to tell Plaintiffs it saw no liability in tort.  Sec. Am. Compl. ¶¶ 146-48.  The D.C. Government did not opine on any liability under Federal causes of action even Plaintiffs threatened them with federal lawsuits for two years. *Id.*

Based on the advice of counsel, Roe pursued administrative remedies that he was told had a good chance of success.  His attorney never suggested timely filing separate legal action in Federal court against the District of Columbia.  Roe had no way of knowing that his son's attorney simply wanted no more to do with the case after AUSA Florence declined to prosecute Reginald Wilson.

Per the doctrine of laches, this Court should find that no statute of limitations bars actions by Plaintiff Doe or Roe.  The District of Columbia, a defendant in this case, unreasonably delayed Doe, and thus Roe, from filing this action, by taking an unreasonable period to issue what should have been an automatic denial of his tort claim, which necessarily failed due to a failure to notify the Mayor within six months. Because the District of Columbia demonstrated a lack of diligence, and in doing so, gravely caused both Plaintiffs to miss statutes of limitations in this case, under the doctrine of laches, this Court should, within its discretion, permit Doe to pursue actions in this case despite the expiration of certain statute of limitations.

**II.     Defendants Mann and Anderson are not entitled to qualified immunity.**

Qualified or conditional immunity from civil liability means individuals would not be liable as long as they are acting clearly within the scope of their authority for the betterment of those they serve. If they venture outside the scope of their authority, and, in doing so, violate someone's rights, then they may be personally liable.

The U.S. Court of Appeals for the Sixth Circuit, in *Williams ex rel. Williams v. Ellington,* noted that government officials performing discretionary functions generally have qualified immunity that shields them from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known about. *Williams ex rel. Williams v. Ellington*, 936 F. 2d. 881, n. 18 (6th Cir. 1991) *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, n. 30 (1982). It is important to observe that if school officials deny a student his or her constitutional rights but do so in the good faith fulfillment of school responsibilities and not in ignorance of and disregard for established indisputable principles of law, no liability will occur. This qualified immunity is accorded to school teachers and administrators only within the bounds of reason.

Furthermore, Federal courts in nearby circuits have determined that a school principal may be individually liable under Section 1983 for deliberate indifference to sexual harassment between a teacher and a student or student and student. Liability of supervisors, such as school principals, may be established if the plaintiff can demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

4

*E.g., Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Individuals, including children in school, have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause. *Ingraham v. Wright*, 430 U.S. 651, 672-74, 97 S. Ct. 1401, 51 L.Ed.2d 711 (1977).[2] Mann and Anderson were both aware of Doe's complaint that Wilson sexually harassed his son. However, Mann went beyond simply violating Roe's procedural due process rights by declining to investigate per D.C. Municipal Regulation, title 5, section B2405 (requires the school principal to investigate allegations of sexual harassment of a student and produce a written report within ten days). Mann and Anderson both did more than commit negligence by refusing to report Wilson to law enforcement per D.C. Code § 4-1321.02 for child sexual harassment, sexual assault, and sexual battery, i.e., touching the seven-year old boy in the hallway in front of the boy's father for Wilson's own sexual

---

[2] In addition to substantive due process, Mann and DCPS also denied minor Plaintiff Roe procedural due process by failing to carry out the DCPS grievance procedure as described in the D.C. Municipal Regulations. D.C. Mun. Reg. § 5-B2405. Although due process tolerates variances in procedure "appropriate to the nature of the case," (*Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 313 (1950)), it is nonetheless possible to identify its core goals and requirements. First, "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Thus, the required elements of due process are those that "minimize substantively unfair or mistaken deprivations" by enabling persons to contest the basis upon which a state proposes to deprive them of protected interests. *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). The core of these requirements is notice and a hearing before an impartial tribunal. Due process may also require an opportunity for confrontation and cross-examination, and for discovery; that a decision be made based on the record, and that a party be allowed to be represented by counsel. At times, the Court has also stressed the dignitary importance of procedural rights, the worth of being able to defend one's interests even if one cannot change the result. *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978); *Marshall v. Jerrico, Inc*., 446 U.S. 238, 242 (1980); *Nelson v. Adams*, 529 U.S. 460 (2000) (amendment of judgement to impose attorney fees and costs to sole shareholder of liable corporate structure invalid without notice or opportunity to dispute).

Per District of Columbia Municipal Regulation § 5-B2405, anyone can complain either verbally or in writing to any school staff member about sexual harassment of a student. *Id*. at § 5-B2405.4. If the complaint is verbal, the school staff member shall reduce the complaint to writing. *Id*. By the end of the next school day the complaint shall be reported to the school principal. *Id*. Within one school day of the report, a thorough discussion with the grievant will take place. *Id*. An investigation and subsequently a written report detailing the investigation findings shall be completed within ten days. *Id*. Roe's father Doe made such a verbal grievance to Dale Mann, the school principal. Sec. Am. Compl. ¶¶ 78-79. He also made a verbal grievance to Jacqueline Anderson, the school vice-principal. Sec. Am. Compl. ¶¶ 80-82. On knowledge and belief, neither Mann nor any other school employee or official ever reduced Doe's complaint to writing. No investigation was ever carried out and no investigation report was ever completed or produced to Roe. Instead, Mann made a feeble attempt to blackmail Roe into keeping quiet, by suggesting that he had grounds to report Doe for neglect per D.C. Code 4-1321.02. Sec. Am. Compl. ¶¶ 115-16.

gratification, while also making passes at the boy in his class by referring to him as "pretty eyes" and other names given to suggest an romantic partnership and to isolate Roe from the other children in his class. Sec. Am. Compl. ¶¶ 50, 53, 54.  The mental and emotional damage to Roe suffered was visible in the violent acts he committed after Wilson became his teacher, e.g., kicking a chair across a classroom, *id*. at ¶¶ 35, 38, 67, and acting in sexual ways with adults such as his father at home. *Id*. at ¶¶ 56-58.

Wilson's harassment and grooming of Roe included statements and conduct that appeared innocent to a seven-year old child, because Wilson intended to build trust in the child, to facilitate later sexual activity with that child.  Significant seductive conduct was never reported by Roe to his parents because Roe trusted Wilson and did not initially recognize that Wilson was drawing distinctions between him and his classmates to ensure that those classmates seemed less alarmed about what Wilson was planning.

Having been a teacher with an "old-school" approach to education, Roe's father Doe had instructed Roe that he was to do whatever a teacher said and told Roe that in a dispute, he would be inclined take the teacher's word over that of Roe.  Upon finally realizing that the attention he was receiving from Wilson was sexual in nature, the extreme emotions caused by the violations to his sense of self and his privacy and as well as the possibility of disappointing his parents caused a sense of outrage that caused him to act out in ways that he never had before Wilson arrived at Eaton.  Roe, a child with a very high IQ (id. ¶ 25-27) had previously been an outgoing and academically successful student before being Wilson, an authority figure, encountered him and began "grooming" him for his own prurient gratification.  Roe had previously been outgoing and enjoyed school and had never conducted himself in this way. *Id*. at ¶¶ 38, 39.

Mann and Anderson claim here that "there is no evidence that the alleged constitutional right to have school officials report what they don't believe to be sexual misconduct was clearly established." Mann and Anderson, being seasoned and experienced educators, were certainly alerted, or should have been alerted by Wilson's behaviors, because of how unusual and alarming they are within the context of a public-school environment. Public school teachers are trained and expected to never physically touch students barring some extreme situation, e.g., a student is physically assaulting the teacher or another teacher, a student or students are physically assaulting one or more other students, or an ill or injured student needs help to get to an ambulance, to a parent's vehicle, or to a school nurse's station. Reginald Wilson, (who has a master's degree in education from Delta State University)[3], John Doe No 1 (who himself has a graduate degree in education and taught in public schools), Dale Mann and Jacqueline Anderson (both on whom have degrees in education and have worked in public schools for more than twenty years) are all aware of this expectation that teachers not touch children absent exigent circumstances. Teachers can express empathy without initiating physical contact with their pupils. The idea that Reginald Wilson would casually caress the face of a child, for his own sexual gratification, and then publicly identify the child as his intended sex partner using phrases employed in popular love songs ("pretty eyes") placed Dale Mann and Jacqueline Anderson on notice and should have alerted them to action. Wilson's sexual overtures to minor Plaintiff were more than inappropriate, they included unwanted, and unauthorized physical touching that,

---

[3] Teachers like Reginald Wilson are certified to teach in Mississippi after completing a "traditional teacher education program" such as the one Wilson received at Delta State University. Educator Licensure, Mississippi Department of Education, https://www.mdek12.org/OTL/OEL The course at Delta State University in which Wilson would have learned about keeping his hands away from children is CEL 611, Classroom Management. Academic Catalogs, Delta State University, http://www.deltastate.edu/academic-affairs/catalog/. This course was also called "Classroom Management" in the late 1990s when both Wilson and Doe were enrolled in their graduate degree programs of education at their respective universities.

coupled with Wilson's strange sexual statements, necessitated that Mann and Anderson investigate him, and if warranted, reprimand or discipline him.

Mann is not entitled to qualified immunity, because his ignorance of and disregard for established indisputable principles of law. In addition to his aforementioned willful neglect in violation of statute and regulation, Mann made a veiled threat to Doe that he would falsely report Doe for neglecting his children – in a weak effort to prevent Doe from reporting Wilson or from reporting Mann for failing to report Wilson. In the fall of 2012 when Mann made this statement to Doe, Mann assumed that Doe knew the full truth about what Wilson was doing or had attempted to do with his child. In the same way Mann thought offering Doe a job would keep Doe pacified (*id*. at ¶ 41), Mann made a feeble attempt to keep Doe "silent" by indirectly threatening to report Doe for neglecting his other child. *Id*. ¶¶ 115, 116.

Anderson, in willfully refusing to report Wilson above Mann's head to law enforcement, is also not entitled to qualified immunity and is equally culpable, responsible and liable as Dale Mann for the damages suffered by minor Plaintiff Roe.

### III.   Plaintiffs' negligence claims against Mann and Anderson do not fail as a either matter of fact or law.

A claim for negligent supervision of Reginald Wilson lies against Principal Mann and Vice-Principal Anderson. Dale Mann, as the Supervisor of a school has the legal right to investigate, counsel, and discipline probationary employees, which is what Reginald Wilson was in 2012 and 2013 before being questioned by police and subsequently quitting his job. D.C. Mun. Reg. § 5-E1307. One exception to the DCPS Chancellor's power to hire and fire, is the grant to supervisors, e.g., school principals like Dale Mann, to discipline probationary, non-

tenured teachers like Reginald La'Vincient Wilson. 5 D.C. Mun. Reg. § 5-E1402.[4] Mann and Anderson both knew or should have known that Wilson was acting out sexually towards at least one student. This knowledge came from Doe's initial conversations with Mann and Anderson in April and May 2012. These conversations occurred before the sexual assault in which Wilson groped Roe's penis, but after there was reason to believe sexual harassment was occurring, including Wilson's strange and unwanted touching of Roe and his strange romantic statements to Roe, a seven-year old boy.

Neither Mann nor Anderson reported these allegations to DCPS or the police, nor did they separate Roe from Wilson or even ask Wilson about the allegations despite their obligations under D.C. Municipal Regulation tit. 5, sec. B-2405. In light of the subsequent assault, this is enough to constitute negligent supervision.

Mann and Anderson negligently retained Wilson. They failed to take Doe's allegations seriously, and doing so may have led them to the truth about Wilson's pattern of sexual harassment. Sexual harassment is a ground for discipline at the least, and possibly firing. Their failure to investigate combined with the credibility of the allegations may have given them constructive knowledge, which they had a duty to act on; since they did not, and acting on that duty would have included disciplining, reassigning, or firing Wilson, a claim for negligent supervision of Wilson by Anderson and Mann (and through them, the District of Columbia)

---

[4] A Supervisor is the administrative head of a school.  In the case of a teacher such as Reginald Wilson, the principal is the Supervisor. *Oates v. District of Columbia*, 647 F. Supp. 1079 (D.D.C. 1986) (CBA stated that "the supervisor shall make available to all ET-15 personnel in the school a list of vacancies and the qualifications" and "the athletic director at Ballow advised the principal of vacancies on the coaching staff, and one of the vacancies was football coach… [t]he vacancy announcement was dated April 19, 1985"). Consequently, the task of investigation and discipline fell to Defendant Wilson's Supervisor, Dale Mann.  As Defendant Wilson's Supervisor, Dale Mann was permitted to investigate Defendant Wilson for misconduct and to engage in corrective actions including but not limited to providing written counseling and issuing written letters of reprimand.

might win.)

Both Anderson and Mann are directly liable, not only for negligent hiring or supervision but also for negligence per se based on DC Code § 4-1321.02. Negligence per se arises where a duty is created by statute; minor Plaintiff Roe was in the class of those the statute was designed to protect; the defendant failed to comply with the statute; and that failure was the proximate cause of Roe's injuries. In this case, DC Code § 4-1321.02 would have required both Anderson and Mann to report Wilson's harassment to the appropriate authorities. This was clearly designed to protect children at school (since one of the categories of reporters is school officials), and either of them reporting the initial harassment may have also prevented the later unwanted sexual touch of Roe's genitals. Since this was also statutorily required based on their employment status as school officials, their failure to do so also falls within the scope of their employment.

**IV.     Conclusion**

For the foregoing reasons, Plaintiffs ask that the Court deny in its entirety Mann's and Anderson's motion to dismiss.

DATED: December 17, 2018          Respectfully submitted,

                                              THE LAW OFFICES OF
                                              GERALD L. GILLIARD, ESQ. LLC

                                              __/s/ Gerald L. Gilliard_____
                                              Gerald L. Gilliard, Esq.
                                              D.C. Bar. No. 497726
                                              1629 K Street NW, Suite 300
                                              Washington, D.C. 20006
                                              Tel. (202) 827-9753
                                              Fax. (202) 478-1783
                                              E-Mail: ggilliard@employmentlegalteam.com