# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MORGAN ROE, *et al.*,** | |
| Plaintiffs, | |
| v. | Case No. 18-cv-00171 (CRC) |
| **REGINALD LA'VINCIENT WILSON, *et al.*,** | |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiffs John Doe and his minor son Morgan Roe allege that a District of Columbia public school teacher sexually assaulted Morgan and that the District and two school officials failed to take actions that would have prevented the assault.[1]  They have sued the District of Columbia, the teacher (Reginald Wilson), and the school's principal (Dale Mann) and vice-principal (Jacqueline Anderson).  All defendants have moved to dismiss plaintiffs' second amended complaint either in full or in part.  For the reasons explained below, the Court will grant the District of Columbia's motion to dismiss in full; Wilson's partial motion to dismiss in part; and Mann and Anderson's motion to dismiss in part.  The Court will deny Wilson's motion to strike one aspect of the plaintiffs' requested relief.

## I.  Background

As required on a motion to dismiss, the Court draws this factual background from the complaint, "assum[ing] the truth of all well-pled factual allegations."  Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014).  The defendants naturally dispute many

---

[1] The Court has permitted plaintiffs to proceed under pseudonyms in order to protect the minor's privacy.

of the allegations, and Wilson "strongly denies" sexually harassing or assaulting Morgan. Wilson MTD, ECF No. 67, at 7 n.3.

Plaintiffs originally filed this action in January 2018 against the District of Columbia, District of Columbia Public Schools ("DCPS"), a former DCPS chancellor in his official capacity, and former DCPS teacher Reginald Wilson. In September, the Court granted plaintiffs leave to file a second amended complaint ("SAC"), which raises constitutional claims under 42 U.S.C. § 1983 against the District of Columbia, Wilson, and John Eaton Elementary School Principal Dale Mann and Vice-Principal Jacqueline Anderson (Count I); a claim under Title IX of the Education Act Amendments of 1972, 20 U.S.C. § 1681 *et seq.* against the District (Count II); common-law negligence and negligence *per se* claims against Mann and Anderson (Count III); and common-law assault, battery, and intentional infliction of emotional distress claims against Wilson (Count IV). See Second Am. Compl. ("SAC"), ECF No. 60-1. Plaintiffs allege that Wilson, Morgan's second-grade math teacher at the time, sexually harassed and eventually sexually assaulted Morgan, id. ¶ 2, and that school officials failed to respond appropriately to his father Doe's reports of concern prior to the assault, id. ¶¶ 4–7.

According to plaintiffs, in mid-April 2012, Doe met with Morgan's homeroom teacher and Principal Mann to discuss Morgan's misbehavior in class. Id. ¶ 38. Morgan had not previously had behavioral problems. Id. ¶ 39. After the meeting, father and son ran into Wilson. Id. ¶ 49. According to plaintiffs, Wilson knelt before Morgan and told him how he should behave in school before telling Morgan how "special" he is and "demonstratively caress[ing]" the boy's face. Id. ¶¶ 50–51. A few days later, Morgan told his mother that Wilson had said he had "pretty eyes" in front of his math class. Id. ¶ 53.

On April 24, 2012, Doe learned that Morgan had apparently become upset and kicked a chair around the classroom after Wilson did not give him candy. Id. ¶¶ 61, 67. The next day, Doe identified himself to Wilson as Morgan's father. Id. ¶¶ 68–70. He did so, Doe claims, because he believed child sex abusers tend to target fatherless children. Id. ¶ 71.

Later that day, Vice-Principal Anderson called Doe into her office to explain that he was making Wilson feel uncomfortable. Id. ¶¶ 75–77. Doe responded that Wilson "*should* . . . feel uncomfortable" because he had "spent several months making sexual come-ons and overtures to his *seven-year son* Morgan, often in front of Morgan's classmates (ex. telling Morgan that he had 'pretty eyes,' caressing Morgan's face with his hand while dramatically expounding on how 'special' he believed Morgan to be, etc.)." Id. ¶ 78 (emphases in original). Over the course of the next month, Doe repeated "to Principal Mann what [he] had told vice-principal Anderson about Wilson making sexual overtures to Morgan." Id. ¶ 80. However, according to plaintiffs, neither Mann nor Anderson responded to Doe's concerns. Id. ¶ 92.

Plaintiffs allege that later in April or May 2012, Wilson asked Morgan to stay in the classroom alone with him while the other students waited outside. Id. ¶ 85. Wilson allegedly told the boy he had again been misbehaving before fondling Morgan's penis through his pants. Id. ¶¶ 86–87. Morgan told his mother about what happened but did not tell his father until over a year later in June 2013. Id. ¶¶ 91, 123.

Meanwhile, Doe and his family moved to Illinois in February 2013. Id. ¶ 119. At his new school, Morgan's behavior deteriorated further and he was bullied for being "effeminate." Id. ¶ 120. Morgan also expressed a desire to kill himself on multiple occasions. Id. ¶¶ 121–22. After Morgan finally told his father in June 2013 what had allegedly happened with Wilson, Doe

called the police.  Id. ¶¶ 123–24.  The police interviewed Wilson and presented an arrest warrant to the prosecutor, but according to plaintiffs, she declined to pursue the case.  Id. ¶¶ 128–30.

The following year, in June 2014, Doe filed an administrative notice of a tort claim with the D.C. Office of Risk Management ("DCORM") based on the alleged sexual harassment and assault.  Id. ¶ 136.[2]  Two years later, Doe was notified that "after a lengthy investigation," the office had determined that "the facts do not indicate liability on the part of the District of Columbia government, or its employees, in regards to this serious allegation."  Id. ¶ 148.

As noted above, plaintiffs filed this lawsuit in January 2018.  They amended the complaint in March, see ECF No. 18, and, after much back and forth, filed the operative second amended complaint in late September, see ECF No. 60-1.[3]  The District of Columbia, Mann, and Anderson have moved to dismiss all of the claims against them.  DC MTD, ECF No. 65; Mann and Anderson MTD ("M/A MTD"), ECF No. 80.  Wilson moves for partial dismissal and has

---

[2] Section 12-309 of the D.C. Code requires a claimant to provide the mayor, within six months of an injury or damage, with written notice of a tort claim as a prerequisite to filing a tort action against the District of Columbia.  See Gwinn v. District of Columbia, 434 A.2d 1376, 1378 (D.C. 1981).  Upon receipt of a notice of claim, the DCORM assigns the claim to an adjuster and provides the claimant with a claim number.  Tort Liability Claim, Office of Risk Management, https://orm.dc.gov/service/tort-liability-claim (last accessed Jan. 30, 2019).  The adjuster investigates the claim and determines whether the District will accept or reject it.  Id.  If the claim is accepted, the DCORM then attempts to negotiate a settlement with the claimant.  Id.  If the claim is denied, the claimant may file a civil action.  Id.

[3] Plaintiffs filed a third amended complaint without leave of the Court or the opposing parties' consent on December 18, 2018.  See ECF No. 86.  After the District and Wilson moved to strike that complaint, see ECF Nos. 88 & 94, plaintiffs moved to withdraw it, see ECF No. 97.  The Court will grant plaintiffs' motion to withdraw the filed third amended complaint.  To the extent plaintiffs' motion also seeks prospective leave of this Court to file a third amended complaint at a later date, it is denied.  The Court will consider only a proper motion for leave to amend that complies with the applicable rules.

also moved to strike certain parts of the relief plaintiffs request. Wilson MTD.[4] After receiving multiple extensions, plaintiffs filed their oppositions to the District and Wilson's motions on December 11, 2018. ECF Nos. 81 & 82. Plaintiffs timely filed their opposition to Mann and Anderson's motion on December 17, 2018. See ECF No. 84. Despite being instructed that the Court will grant no further extensions, see Dec. 6, 2018 Minute Order, plaintiffs on December 18, 2018 moved for leave to file out of time amended oppositions to the District and Wilson's motions. See ECF No. 87. Those defendants oppose this request. See ECF Nos. 90 & 94. Nonetheless, the Court will consider the arguments and revisions advanced in those amended oppositions.[5] Defendants' motions to dismiss the second amended complaint are now ripe for the Court's review.

## II. Standard of Review

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. To make this determination, the Court "must take all of the factual allegations in the complaint as true." Id. It must also "constru[e] the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."

---

[4] Wilson does not seek dismissal of plaintiffs' assault and battery, and intentional infliction of emotional distress claims against him.

[5] Accordingly, citations to plaintiffs' oppositions to the District and Wilson's motions are to the documents appearing at ECF No. 87.

<u>Stewart v. Nat'l Educ. Ass'n</u>, 471 F.3d 169, 173 (D.C. Cir. 2006). Finally, the Court may only "consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." <u>Id.</u>

## III. Analysis

### A. <u>John Doe's Claims</u>

Defendants have moved to dismiss all claims brought by John Doe in his individual capacity as time-barred under the applicable three-year statute of limitations. DC MTD at 11 (citing D.C. Code § 12-301(8)); M/A MTD at 7–8 (citing same). In response, Doe explains that he has "never sought relief for himself under Title IX or 42 U.S.C. [§] 1983," Pls' Opp'n to DC MTD at 10, but at the same time alludes to the possibility of filing tort claims against "any of the Defendants" in the future, <u>id.</u> at 11; Pls' Opp'n to M/A MTD at 2.

To the extent Doe seeks or intends to bring tort claims in his individual capacity against any of the defendants, they are barred by section 12-301(8). Doe resists this outcome by urging Court to accept any tort claims under the "doctrine of laches." <u>See</u> Pls' Opp'n to DC MTD at 11–13; Pls' Opp'n to M/A MTD at 2–3. But the equitable doctrine of laches is an affirmative defense available to *defendants* who would be prejudiced by a plaintiff's unreasonable delay in filing suit. <u>Maalouf v. Islamic Rep. of Iran</u>, 306 F. Supp. 3d 203, 212 n.9 (D.D.C. 2018) (citing Fed. R. Civ. P. 8(c)(1)). Out of an abundance of caution, though, the Court will liberally construe plaintiffs' argument as a more general one for equitable relief from the statute of limitations.

Because any potential individual tort claims would be decided under D.C. law, they are subject to D.C. tolling rules. The trouble for Doe is that ordinarily, "District of Columbia law does not recognize an equitable tolling exception to the statute of limitations." <u>Johnson v.</u>

Marcheta Inv'rs Ltd. P'Ship, 711 A.2d 109, 112 (D.C. 1998). The District of Columbia Court of Appeals has recognized just "two limited exceptions to [its] generally strict application of the statute of limitations: the lulling doctrine and the discovery rule." East v. Graphic Arts Indus. Joint Pension Tr., 718 A.2d 153, 156 (D.C. 1998). The lulling doctrine tolls the limitations period when a defendant "has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation period prescribed by the statute to run." Id. at 156–57 (citation omitted). "Anything" here means "something that amounted to an affirmative inducement to plaintiffs to delay bringing action." Beach TV Props., Inc. v. Solomon, 306 F. Supp. 3d 70, 89 (D.D.C. 2018) (citation omitted). And under the discovery rule, a "claim does not accrue until the plaintiff, exercising due diligence, has discovered or reasonably should have discovered all of the essential elements of her possible cause of action[.]" Farris v. Compton, 652 A.2d 49, 54 (D.C. 1994) (citation omitted).

Doe offers two reasons why he should not be barred from advancing untimely tort claims but neither falls within these limited exceptions. First, he says he relied on the advice of an attorney to file what proved to be a dead-end administrative tort claim with the DCORM instead of a civil lawsuit in either D.C. or federal court. Pls' Opp'n to DC MTD at 11–12; Pls' Opp'n to M/A MTD at 2–3. Frustrated though he may be with the attorney's advice, it does not save Doe's individual claims from dismissal. In the analogous context of federal equitable tolling, this Court recently emphasized that "[e]quitable tolling is not appropriate in cases with 'garden variety claim[s] of excusable neglect.' Where, as [claimed] here, 'counsel blundered to his client's prejudice, the remedy is malpractice litigation against the culprit, not the continuation of litigation against an adversary who played no role in the error.'" Congress v. District of Columbia, 324 F. Supp. 3d 164, 173 n.8 (D.D.C. 2018) (first quoting Irwin v. Dep't of Veterans

<u>Affairs</u>, 498 U.S. 89, 96 (1990); then quoting <u>Farzana K. v. Indiana Dep't of Educ.</u>, 473 F.3d 703, 706 (7th Cir. 2007)).

Plaintiffs do suggest that the District played some role in the error by "unreasonably delay[ing] Doe, and thus Roe, from filing this action, by taking an unreasonable two-year period to issue what should have been an automatic denial of his tort claim." Pls' Opp'n to DC MTD at 13; Pls' Opp'n to M/A MTD at 3. Unlike plaintiffs' first explanation for the delay, their second focuses on defendants' conduct and has the ring of the lulling doctrine. However, plaintiffs identify no *affirmative* misconduct on the part of the DCORM, such as misrepresenting that plaintiffs would prevail in that action, that prevented them from suing within the statutory limitations period.

Because neither limited exception to the statute of limitations applies, the Court will dismiss any claims brought by Doe in his individual capacity as barred by section 12-301(8). That section does not apply to Morgan Roe, however, because he was and still is a minor. D.C. Code § 12-302(a)(1). By extension, the Court will not dismiss as time-barred any claims that Doe brings as a representative of his minor son. The remainder of this opinion, then, discusses only claims as they relate to Morgan and Doe in his representational capacity.

B. <u>Section 1983 Claim Against All Defendants (Count I)</u>

Plaintiffs bring constitutional claims against all defendants under 42 U.S.C. § 1983. SAC ¶¶ 196–216. These claims are premised on purported violations of Morgan's Fifth Amendment due process and equal protection rights. Plaintiffs allege a substantive due process violation based on Morgan's right "to be free from conduct that violates his bodily integrity," <u>id.</u> ¶ 203

(D.C.), ¶ 206 (Wilson), and an equal protection violation based on Morgan's right "to be free from discrimination on the basis of his sex," id. ¶ 204 (D.C.), ¶ 207 (Wilson), ¶ 210 (Mann).[6]

Wilson moves to dismiss some, but not all, of the § 1983 claims against him on the ground that plaintiffs have failed to allege recognized constitutional violations. Wilson MTD at 4, 8. The District of Columbia moves to dismiss the § 1983 claims against it because plaintiffs have failed to allege municipal liability. DC MTD at 11. And Mann moves to dismiss the § 1983 claims against him on the basis that he is entitled to qualified immunity. M/A MTD at 8.

   *1. Wilson*

First, Wilson. Numerous courts have held that sexual assault or molestation by a school teacher can violate a student's substantive due process right to bodily integrity. See Blue v. District of Columbia, 850 F. Supp. 2d 16, 25–26 29 (D.D.C. 2012), aff'd 811 F.3d 14 (D.C. Cir. 2015) ("While neither the Supreme Court nor the D.C. Circuit has ruled on whether the right to bodily integrity includes the right to be free from sexual abuse, courts in several Circuits have sustained substantive due process claims arising from a primary or secondary student's sexual relationship with a teacher." (citing Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 611 (8th Cir. 1999); Doe v. Taylor Ind. Sch. Dist., 15 F.3d 443, 451–52 (5th Cir. 1994); Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 727 (3d Cir. 1989))); Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (concluding that "public school children have a constitutionally protected [due process] right not to be sexually abused by school employees at school"). Wilson therefore does not contest—for purposes of this motion only—that plaintiffs

---

[6] Although plaintiffs bring their § 1983 claims against all defendants, they make no factual allegations of constitutional violations by Vice-Principal Anderson. Accordingly, to the extent plaintiffs bring § 1983 claims against Anderson, those claims are dismissed.

have plausibly alleged a substantive due process violation based his alleged fondling of Morgan. Wilson MTD at 7. Accordingly, plaintiffs' § 1983 substantive due process claim based on that allegation may proceed against Wilson.

As for plaintiffs' allegation that Wilson made inappropriate comments towards Morgan, the Court agrees with Wilson that they cannot sustain a substantive due process claim on their own. "Substantive due process claims based [u]pon 'non-physical types of harassment, including verbal abuse,' are subject to the 'shocks the conscience' analysis." Bridges ex rel. D.B. v. Scranton Sch. Dist., 644 F. App'x 172, 178 (3d Cir. 2016) (alteration in original) (quoting S.M. v. Lakeland Sch. Dist., 148 F. Supp. 2d 542, 547 (M.D. Pa. 2001), aff'd 33 F. App'x 635 (3d Cir. 2002)). Courts have consistently concluded that verbal harassment alone— though inappropriate, unprofessional, and even jarring—generally does not rise to a conscious-shocking level. Id. (granting summary judgment to school district on substantive due process claim based on "verbal abuse" where teacher called student "stupid," "dummy," and "lazy," and threw student's desk multiple times); Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) (dismissing verbal-abuse substantive due process claim against elementary school teacher "accused of yelling and screaming at students, using foul language, . . . calling students 'stupid,' and referring to students as 'bimbos,' 'fatso,' and 'welfare bunch'"); Abeyta By & Through Martinez v. Chama Valley Ind. Sch. Dist., No. 19, 77 F.3d 1253, 1255–57 (10th Cir. 1996) (explaining that teacher repeatedly calling sixth-grade student a "prostitute" in front of her class did not rise to a substantive due process violation).

But here, the Court does not understand plaintiffs to be advancing two separate substantive due process claims, one premised on the alleged fondling and the other on the alleged verbal harassment leading up to that physical abuse. Evidence of harassment—Wilson's alleged

comments that Morgan has "pretty eyes" and is "special"—would not sustain a substantive due process claim on its own but could be relevant to the whether the subsequent fondling occurred. The Court will therefore decline Wilson's request to bifurcate and dismiss plaintiffs' substantive due process claim based on sexual harassment.  See Wilson MTD at 4–7.

Finally, Wilson moves to dismiss plaintiffs' equal protection claim.  Id. at 8.  Plaintiffs allege that Wilson's alleged sexual harassment and abuse also "violated Plaintiff Morgan's rights under the Equal Protection Clause of the Fifth Amendment to be free from discrimination on the basis of his sex."  SAC ¶ 207.[7]  Wilson counters that plaintiffs fail to offer any support that Morgan was discriminated against because of his sex and that, in any event, plaintiffs' equal protection claim is duplicative of their due process claim.  Wilson MTD at 9–10.

The D.C. Circuit has not addressed whether allegations of sexual harassment and abuse can support an equal protection claim, but other Courts of Appeal have concluded that they can. In Doe v. Hutchinson, 728 F. App'x 829 (10th Cir. 2018), for example, the Tenth Circuit held that a female student stated an actionable harassment claim by alleging that her gym teacher made an explicitly gender-based, sexual comment towards her in class; frequently spoke to and about female students in sexualized terms; and discussed his own sexual acts in front of female students. Id. at 833.  Many courts considering equal protection claims based on sexual harassment have looked to Title VII hostile-work-environment case law as guidance for determining whether the allegations of harassment rise to the level of a gender-based

_____

[7] For the sake of clarity, there is no "Equal Protection Clause of the Fifth Amendment." SAC ¶¶ 204, 210.  However, the Supreme Court has interpreted the Fifth Amendment's Due Process Clause to encompass the rights contained in the Equal Protection Clause of the Fourteenth Amendment and to apply to the District of Columbia.  See Bolling v. Sharpe, 347 U.S. 497, 499 (1954).

constitutional violation. In <u>Jennings v. University of North Carolina</u>, 482 F.3d 686 (4th Cir. 2007), for instance, the Fourth Circuit explained that for the student's claims to survive summary judgment, she would have to show that her coach was "a state actor, he harassed her because of sex, and the harassment was sufficiently severe and pervasive to interfere unreasonably with her educational activities." <u>Id.</u> at 701 (quoting <u>Hayut v. State Univ. of N.Y.</u>, 352 F.3d 733, 744 (2d Cir. 2003), for the proposition that "§ 1983 sexual harassment claims based on a hostile environment theory 'are governed by traditional Title VII [] jurisprudence'"); <u>see also</u> <u>Hutchinson</u>, 728 F. App'x at 832 (explaining that "[o]ne form of actionable sexual harassment is 'hostile environment harassment'" which requires a student to show that her teacher's "conduct was sufficiently severe or pervasive as to interfere unreasonably with her school performance and create a hostile or abusive educational environment" (citation omitted)).

To the extent plaintiffs base their equal protection claim on sexual harassment, their allegations are not sufficiently severe or pervasive to meet the Title VII hostile-environment standard. They specifically claim that one time, Wilson told Morgan that he had "pretty eyes" and another time, that he was "special." This falls far short of the facts of cases like <u>Hutchinson</u>, where the teacher in question allegedly made a series of sexually explicit, gender-based comments directed at the female student and her female peers.

And to the extent plaintiffs' equal protection claim is instead premised on the alleged sexual assault, the Court will follow the lead of the Fifth Circuit, which has suggested that allegations of sexual assault or abuse are better considered under the rubric of substantive due process rather than equal protection. <u>See</u> <u>Taylor</u>, 15 F.3d at 458. In <u>Taylor</u>, the Firth Circuit held that the student's § 1983 substantive due process claim based on her teacher's alleged sexual harassment and abuse superseded any potential equal protection claim absent arguments

to the contrary.  Id.  The student did not argue, for example, that the damages that she could

recover based on an equal protection violation "would be any more extensive than the damages

that she could recover based on the substantive due process violation."  Id.  Here, too, because

the Court will permit plaintiffs' substantive due process claim against Wilson to proceed, it is

unnecessary for the coextensive equal protection claim to go forward as well, especially where it

does not appear that plaintiffs have pled a violation based on intentional gender discrimination.

### 2.  District of Columbia

Next, the District of Columbia.  "To state a claim for relief against a municipality under

section 1983, a plaintiff must satisfy two requirements: [he] must plead 'a predicate

constitutional violation' and that 'a custom or policy of the municipality caused the violation.'"

Blue v. District of Columbia, 811 F.3d 14, 18 (D.C. Cir. 2015) (quoting Baker v. District of

Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).  The Court may consider either requirement

first.  Id.  Here, the Court will start and stop with whether plaintiffs have alleged a municipal

custom or policy.

To allege that a municipal custom or policy caused the predicate constitutional violation,

a plaintiff must allege "an 'affirmative link,' such that a municipal policy was the 'moving force'

behind the constitutional violation."  Baker, 326 F.3d at 1306 (first quoting City of Okla. City v.

Tuttle, 471 U.S. 808, 823 (1985); then quoting City of Canton v. Harris, 489 U.S. 378, 389

(1989)).  The District argues that plaintiffs have failed to allege any link between a District

policy and the alleged constitutional violations.  DC MTD at 12–16.

The D.C. Circuit "has identified several ways in which a plaintiff may allege a policy or

custom."  Blue, 811 F.3d at 18.  As relevant here, these methods include "the failure of the

government to response to a need (for example, training of employees) in such a manner as to

show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations" and "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom.'" Id. (quoting Baker, 326 F.3d at 1306).

Plaintiffs allege a municipal policy of failing to train employees to recognize, report, and prevent sexual harassment and assault such that the District was deliberately indifferent to the problem of sexual abuse in the DCPS system. SAC ¶ 198; Pls' Opp'n to DC MTD at 7. In an effort to demonstrate a pattern of teacher conduct that would indicate a need for training and other responsive measures, plaintiffs recount a series of instances in which D.C. public school teachers allegedly engaged in inappropriate sexual behavior with students. See SAC ¶¶ 153–95. These incidents, however, fail to establish an affirmative link between the District's alleged failings and the constitutional violations alleged in this case.

Two of the examples plaintiffs cite are to public charter school teachers: one was suspected of having an inappropriate sexual relationship with a student in 2004 but was able to find a teaching job at a different public charter school in 2005, id. ¶¶ 153–56; the other was arrested in 2018 for engaging in child sexual abuse between 2011 and 2013, id. ¶ 163. As the District explains, public charter schools in the District of Columbia are independently governed by the District of Columbia Public Charter School Board. See DC MTD at 13 (citing the District of Columbia School Reform Act of 1995, D.C. Code § 38-1800.01 et seq.). Public charter schools in the District "exercise exclusive control over [their] expenditures, administration, personnel, and instructional methods" and are "exempt from District of Columbia statutes, policies, rules, and regulations established for the District of Columbia public schools." D.C. Code § 38-1802.04(c)(3). In addition, D.C. law makes clear that "an employee of a public

charter school shall not be considered to be an employee of the District of Columbia Government for any purpose." Id. § 38-1802.07. This means that public charter school teachers need not be licensed like DCPS teachers must. Accordingly, the allegations regarding public charter school teachers have little or no bearing on whether the *District of Columbia* failed to act in the face of a known risk of child sexual abuse by its own teachers.

Four of the other examples plaintiffs offer involve conduct *after* the 2011–12 school year, when Wilson allegedly harassed and assaulted Morgan. See SAC ¶ 157 (public high school teacher incarcerated after exchanging sexually explicit photographs with students in December 2012); id. ¶ 158 (public elementary school teacher admitted touching student inappropriately and sending student inappropriate picture following the 2013–14 school year); id. ¶ 159 (public elementary school teacher arrested for misdemeanor sex abuse of child in 2015); id. ¶ 164 (public elementary school teacher arrested in 2018 for sexually assaulting students during the 2016–17 school year). These subsequent incidents say nothing about whether District officials during the *2011–2012* school year were deliberately indifferent to a known risk of sexual abuse by DCPS teachers.

Plaintiffs also note a public high school teacher who pled guilty to a sex crime in 2016. Id. ¶ 160. Although it is possible that the offense occurred years before, plaintiffs do not allege that the District was aware of that teacher's conduct at the time Morgan was allegedly experiencing abuse during the 2011–12 school year. And finally, plaintiffs cite Blue v. District of Columbia, 811 F.3d 14 (D.C. Cir. 2015), where a female student allegedly gave birth to a teacher's child following a sexual relationship during the 2008–09 school year. Id. ¶¶ 166–95. The facts alleged in Blue are obviously concerning. But they alone cannot support a reasonable

inference that sexual misconduct by teachers was so widespread as to put the District on notice of the need to initiate training or take other measures to reduce the risk of future incidents.

Plaintiffs also allege that the District of Columbia failed to properly screen employees such as Wilson before hiring them. SAC ¶ 199. But again, they fail to explain how this alleged failure—asserted only in conclusory terms—constitutes a municipal policy.[8] Nor do they suggest any affirmative link between the District's screening procedures and the constitutional violations alleged in this case. Plaintiffs do not contend, for example, that had the District run a background check on Wilson, it would have revealed something that disqualified him from being hired. As in Blue, plaintiffs' complaint taken as true "[a]t most [] suggests that the District made a serious mistake in hiring [Wilson] . . . . [, not] that the District has a *policy* of failing to properly screen employees." Blue, 811 F.3d at 20 (emphasis added).

Finally, plaintiffs argue that the former DCPS chancellor's knowing failure to act in response to persistent sexual harassment and abuse represents an adoption of his subordinates' actions that gives rise to a municipal custom. Pls' Opp'n to DC MTD at 8; SAC ¶ 212. But apart from the conclusory allegation that the chancellor failed to act, the only reference to the chancellor in this section of plaintiffs' complaint is that the District of Columbia does not have a policy to notify parents that they must report complaints of sexual harassment to the chancellor rather than a principal. SAC ¶ 211. That has nothing to do with the chancellor's alleged failure to *respond* to persistent sexual harassment. "[A] section 1983 complaint alleging municipal

---

[8] D.C. municipal regulations require every applicant for a teaching credential in the District to undergo a criminal history background check. D.C. Mun. Regs. tit. 5A, § 1606.1. Plaintiffs do not allege, for example, that the District does not comply with these regulations.

liability must include some factual basis for the allegation of a municipal policy or custom."

Atchinson v. District of Columbia, 73 F.3d 418, 422 (D.C. Cir. 1996).

Accordingly, the Court concludes that plaintiffs have not plausibly alleged a policy or custom to support municipal liability, and it will dismiss the § 1983 claims against the District of Columbia.

### 3. *Mann*

Finally, Principal Mann, who asserts that he is entitled to qualified immunity. The Court need not reach that question, however, for two reasons.

First, plaintiffs' allegations supporting their § 1983 claim against Mann are entirely conclusory. The only reference to Mann in connection with that claim is as follows:

> Because DCPS authorized Dale Mann to place Wilson[] in classrooms composed of children from outside the John Eaton boundary area for the purpose of causing those children to disenroll and thereby create more seats for children of affluent families residing within the Cleveland Park neighborhood, and because Morgan and the African-American students at the school almost entirely resided outside the boundary area, DCPS' conduct violated Plaintiff's rights under the Equal Protection Clause of the Fifth Amendment to be free from discrimination on the basis of his sex and race.

SAC ¶ 210. These assertions focus on DCPS's conduct, not Mann's. Moreover, plaintiffs fail to explain how the alleged practice of encouraging out-of-boundary students to "disenroll" has anything to do with sexual assault, which is the basis of their § 1983 claim.

Second, to the extent plaintiffs have advanced a claim that Mann should be held liable under § 1983 based on his supervisory position, see Pls' Opp'n to M/A at 4–5, they fail to satisfy the standard for supervisory liability. Although the D.C. Circuit has not specifically addressed supervisory liability in the context of sexual harassment, other Courts of Appeal have concluded that a "supervisory employee may be held liable under section 1983" for their subordinate's unconstitutional conduct "upon a showing of deliberate indifference to known sexual

harassment." Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1250 (10th Cir. 1999); see also Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (upholding liability of school principal for deliberate indifference to teacher-on-student sexual harassment). The D.C. Circuit has explained, however, that as a general matter, supervisory liability under § 1983 is a difficult standard to meet: A "plaintiff must establish a high degree of fault in order to implicate the supervisor in the constitutional infractions of his subordinates." Haynesworth v. Miller, 820 F.2d 1245, 1261 (D.C. Cir. 1987), abrogated on other grounds by Hartman v. Moore, 547 U.S. 250 (2006). Under Haynesworth, a plaintiff must show that the supervisor had an obligation to supervise or discipline the alleged wrongdoer; the supervisor breached that duty through "gross negligence" or "deliberate indifference"; and there is an "affirmative link" between this breach and the constitutional violation that occurred. Id. at 1260–62. Deliberate indifference means that the supervisor must "know about the [subordinate's allegedly unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." Smith v. District of Columbia, 149 F. Supp. 3d 128, 134 (D.D.C. 2015) (quoting Int'l Action Ctr. v. United States, 365 F.3d 20, 28 (D.C. Cir. 2004)).

Plaintiffs fail to allege facts sufficient to satisfy this rigorous standard. As explained above, verbal conduct alone—even when unprofessional or inappropriate—does not rise to the level of a substantive due process violation based on a student's right to bodily integrity. Although they argue in their opposition that "Mann and Anderson were both aware of Doe's complaint that Wilson sexually harassed his son," Pls' Opp'n to M/A MTD at 5, they fail to advance allegations to support a reasonable inference that Mann knew of any sexual abuse at the hands of Wilson. Construing plaintiffs' allegations liberally and granting all reasonable inferences in their favor, Doe reported that Wilson was making "sexual overtures" towards

Morgan. But "sexual overtures" based on comments about "pretty eyes" and being "special" do not implicate a substantive due process violation based on bodily integrity. Therefore, these allegations are insufficient to allege that Mann "actually knew of and acquiesced in" Wilson's alleged assault of Morgan (*i.e.*, the subsequent fondling). Murrell, 186 F.3d at 1250 (citation omitted). The Court will thus dismiss plaintiffs' § 1983 claim against Mann.

   C.   Title IX Claim Against District of Columbia (Count II)

   Plaintiffs next allege that the District of Columbia denied Morgan the benefits of an education on the basis of sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, by failing to stop Wilson's alleged sexual harassment of Morgan. SAC ¶¶ 217–23. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. 20 U.S.C. § 1681(a). "[A] student can recover damages under Title IX for sexual harassment by a teacher when three elements exist: (1) an appropriate official at the school, *i.e.*, one with authority to institute corrective measures, (2) had actual notice of the harassment and (3) demonstrated deliberate indifference to the harassment." Blue, 811 F.3d at 21 (citing Gebser v. Lago Vista Ind. Sch. Dist., 524 U.S. 274, 290 (1989)).

   Actual knowledge means the school official *actually knew* about ongoing sexual harassment, not simply that they should have known about such harassment. See Davis ex rel LaShonda D. v. Monroe Cty. Bd. of Edu., 526 U.S. 629, 641 (1999) (explaining that school district may be liable under Title IX only where school official was "deliberately indifferent to *known acts of sexual harassment* by a teacher" (emphasis added)). This is a high standard. Take Gebser, where parents had complained to a school official that a teacher was making sexually

suggestive "inappropriate comments" in class.  524 U.S. at 291.  These complaints, the Supreme

Court concluded, were "plainly insufficient to alert the principal to the possibility that [the

teacher] was involved in a sexual relationship with a student."  Id.  Likewise Blue:  Although

teachers and staff reported seeing the teacher and student alone together in a classroom and

hearing rumors that the two were having a sexual relationship, school officials still were deemed

not to have *known* the teacher was harassing the student, even if they should have.  811 F.3d at

18, 21.  And, as a final example, in Baynard v. Malone, 268 F.3d 228 (4th Cir. 2001), the Fourth

Circuit found that a school principal, Malone, who had received multiple reports that a teacher

had in the past abused a student and was reported to be inappropriately touching a current

student, did not have actual knowledge of the abuse.  This was so even though the school

librarian had visited the teacher's classroom before school, observed the current student sitting

on the teacher's lap with their faces close together and the teacher's arm around the student, and

then reported that behavior to the principal.  Id. at 234.  Again, "[a]lthough Malone certainly

should have been aware of the *potential* for such abuse, and for this reason was properly held

liable under § 1983, there is no evidence in the record to support a conclusion that Malone was *in

fact* aware that a student was being abused."  Id. at 238 (emphases in original).

Putting aside whether Mann, as the principal of John Eaton, is an "appropriate person"

under Title IX, plaintiffs have failed to allege facts to support a reasonable inference that he had

actual notice of the alleged harassment.  As it explained with respect to Mann's liability under

§ 1983, the Court cannot reasonably infer from plaintiffs' allegations that Mann actually knew

about instances of ongoing sexual abuse.  While they generally allege that Doe informed Mann

that Wilson had made "sexual overtures" towards Morgan, the specific conduct alleged in the

complaint—that Wilson described Morgan as having "pretty eyes" and being "special," and

demonstratively caressed Morgan's face—is not sufficient to satisfy the <u>Davis</u> actual-notice standard, which requires known acts of sexual harassment.

Therefore, the Court will dismiss plaintiffs' Title IX claim against the District.

D.  <u>Tort Claims Against Mann and Anderson (Count III)</u>

Next, Mann and Anderson move to dismiss plaintiffs' third claim for relief for common-law negligent hiring, supervision, and retention,[9] and negligence *per se*.

> *1.  Common-law negligence*

"Under D.C. law, an employer owes a duty to third persons, based on the conduct of its employees, to use reasonable care to select competent employees and to fire incompetent employees." <u>Stevens v. Sodexo, Inc.</u>, 846 F. Supp. 2d 119, 127 (D.D.C. 2012) (quoting <u>Griffin v. Acacia Life Ins. Co.</u>, 925 A.2d 564, 575 (D.C. 2007)).  To prevail on this kind of negligence claim, a plaintiff must show that "an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." <u>Giles v. Shell Oil Corp.</u>, 487 A.2d 610, 613 (D.C. 1985).

Mann and Anderson move to dismiss plaintiffs' common-law negligence claim on the ground that a claim for negligent hiring, supervision, and retention lies against Wilson's *employer*—which was DCPS and thus the District of Columbia—not against them individually. M/A MTD at 13.  They emphasize that District of Columbia courts and courts in this district

---

[9] District of Columbia law "does not appear to distinguish between 'negligent supervision' and 'negligent retention.'" <u>Islar v. Whole Foods Mkt. Grp., Inc.</u>, 217 F. Supp. 3d 261, 265 n.1 (D.D.C. 2016) (citing <u>Phelan v. City of Mount Ranier</u>, 805 A.2d 930, 937 (D.C. 2002)).  In addition, District of Columbia courts appear to consider claims for negligent hiring and negligent supervision and retention together.  <u>See</u> <u>Blair v. District of Columbia</u>, 190 A.3d 212, 229 (D.C. 2018).

discuss negligent supervision in the context of an *employer*-employee relationship. And the Court would note that rule is explicit in at least some states. See, e.g., Ott v. City of Mobile, 169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001) ("Alabama recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate."). Yet Mann and Anderson cite no case in this jurisdiction that forecloses a negligent supervision and retention claim against an individual supervisor as opposed to the employer. In fact, through its own research, the Court has found at least one case in which a fellow court in this district concluded that an individual supervisor—there, the chief of police—could be liable for negligent supervision under D.C. law. See Linares v. Jones, 551 F. Supp. 2d 12, 18–19 (D.D.C. 2008) (citing Tarpeh-Doe v. United States, 28 F.3d 120, 123 (D.C. Cir. 1994); Restatement (Second) of Agency § 213)). In the absence of on-point case law, the Court hesitates to dismiss plaintiffs' common-law claim at this stage of the litigation.

What is more, although District of Columbia courts have defined negligent supervision based on the Restatement (Second) of Agency section 213, neither party has addressed that section. See Giles, 487 A.2d at 760 n.10. Section 213 provides that

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent . . . (c) in the supervision of the activity; or (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Id. (quoting Restatement (Second) of Agency § 213)). This section would appear relevant to the parties' dispute about the scope of Mann and Anderson's authority to supervise or terminate Wilson: Plaintiffs argue that principals and vice-principals have at least the authority to investigate and discipline teachers such as Wilson in response to complaints or sexual harassment, and the school officials respond that it is the superintendent and her designees, not

the principal or vice-principal, who have the power to terminate a teacher like Wilson. Both

parties are correct to some extent,[10] but they fail to apply their arguments to the relevant agency

principles.

In the absence of a fuller record, the Court will deny Mann and Anderson's motion to

dismiss plaintiffs' negligent hiring, supervision, and retention claim. The Court can revisit this

claim at summary judgment as necessary.

### 2. *Negligence per se*

Plaintiffs also argue that Mann and Anderson were negligent *per se* by failing to report

their knowledge of Wilson's sexual harassment under D.C. Code § 4-1321.02. SAC ¶¶ 232–33.

Section 4-1321.02 requires a "school official" "who knows or has reasonable cause to suspect

that a child known to him or her in his or her professional or official capacity has been or is in

immediate danger of being a mentally or physically abused child" to "immediately report or have

a report made of such knowledge or suspicion" to either the police or child and family services.

Mann and Anderson argue that they did not have "reasonable cause to suspect" that Morgan was

in any danger of abuse based on Doe's reports, let alone immediate danger. M/A MTD at 15.

But, as they recognize, the Court rejected a similar argument when plaintiffs moved to file their

second amended complaint. <u>See</u> Op. at 8 ("At this early stage in the litigation, these alleged

reports were not too vague to implicate the reporting requirements of section 4-1321.02."). That

was so because the precise nature of Doe's complaints and school officials' understanding of

---

[10] Although it is the superintendent, rather than a principal, who has the ultimate power to "effect the dismissal, suspension, or demotion for cause of any employee," D.C. Mun. Regs. tit. 5E, § 1402.1, the District's student grievance procedures require a principal to initiate an investigation into complaints of sexual harassment by teachers and to produce a written report that includes "a description of any follow up actions taken or to be taken, including any intervention or disciplinary action," D.C. Mun. Regs. tit. 5B, § 2405.5(f)(2).

them is not sufficiently clear at this stage in the litigation to warrant dismissal.  See SAC ¶ 78

(alleging that Doe told Anderson that "Wilson *should* be made to feel uncomfortable, having

spent several months making sexual come-ons and overtures to his *seven-year son* Morgan, often

in front of Morgan's classmates (ex. telling Morgan that he had 'pretty eyes,' caressing Morgan's

face with his hand while dramatically expounding how 'special' he believed Morgan to be,

etc.)"); id. ¶ 80 ("Over the course of the month, Doe visited Principal Mann to repeat to Principal

Mann what he had told vice-principal Anderson about Wilson making sexual overtures to

Morgan.").[11]

Moreover, although Mann and Anderson argue that plaintiffs have failed to plead

causation, the Court concludes that, had Mann or Anderson reported Wilson's alleged sexual

harassment, it is plausible at least that Wilson would not have subsequently sexually assaulted

Morgan, as alleged.  SAC ¶¶ 83–92, 234.  That suffices for purposes of this motion.  Therefore,

the Court will also deny Mann and Anderson's motion to dismiss with respect to plaintiffs'

negligence *per se* claim.

E.  Other Issues

Finally, Wilson asks the Court to strike from plaintiffs' prayers for relief their request

that the District of Columbia be ordered to revoke Wilson's teaching license and enter his name

into a national database that helps guard against educators charged with or convicted of a sexual

offense from returning to the classroom.  Wilson MTD at 11–12.  Wilson cites District of

Columbia regulations, and associated agency guidance, which require the D.C. Office of the

---

[11] The Court sees little tension between that determination under the "reasonable cause" standard of § 4-1321.02 and its finding above that plaintiffs have not plausibly alleged "actual notice" under Title IX or supervisory liability under § 1983, both of which require higher showings.

State Superintendent of Education ("OSSE") to revoke the credential of a teacher charged with or convicted of certain offenses, including a sexual offense involving a minor, and report that teacher's name to other states. D.C. Mun. Regs. tit. 5A, §§ 1607.1(b)(4) & 1607.5; OSSE Educator Credential Denial, Suspension, and Revocation Procedures Guidebook (April 2018) (citing D.C. Mun. Regs. tit. 5A, § 1607). Wilson says there is no basis for this requested relief because plaintiffs concede that he has not been charged with nor convicted of any crime relating to Morgan. Wilson MTD at 12.

Wilson may well be correct that the cited regulation would not authorize the OSSE to take the actions plaintiffs seek. And it bears emphasizing that Wilson has not been charged with or convicted of any crime in connection with the events leading to this lawsuit. But the Court sees no reason to relinquish its own equitable powers prior to any findings of liability in the case. It will therefore decline Wilson's request for now.

## IV. Conclusion

For the foregoing reasons, the Court will grant the District of Columbia's motion to dismiss in full, grant Wilson's partial motion to dismiss in part, and grant Mann and Anderson's motion to dismiss in part. The Court will deny Wilson's motion to strike. Finally, the Court will grant plaintiffs' motion to withdraw their third amended complaint. A separate order accompanies this memorandum disposition.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>February 4, 2019</u>